JUDGE COFER
delivered the opinion oe the court.
The appellant instituted this action at law in the Boyle Circuit Court against J. L. Ward and the appellee, Susan P. Grigsby, on a note for $2,853.78, dated February 16,1871, and due twelve months after date.
It appears, on the face of the note, that Mrs. Grigsby is only the surety of Ward, and she answered that, at the time of its execution, she was a married woman, and relied upon her coverture in bar of the action.
The appellant replied, that before the execution of the note, upon the joint petition of her husband and herself, Mrs. Grigsby was empowered, by a judgment of the Circuit Court of Lincoln County, where they then resided, to make contracts, to sue and be sued, and to trade in her own name as a feme sole.
To this Mrs. Grigsby rejoined that the supposed judgment was void, because certain enumerated steps, deemed necessary to confer on the court jurisdiction to render the judgment, had not been taken. To this there was a surrejoinder containing a traverse of the new matter alleged in the rejoinder.
The law and facts were heard by the court, and judgment was rendered dismissing the action. From that judgment this appeal is prosecuted.
The proceedings and judgment referred to in the pleadings *546 were had and rendered under an act entitled “An act to amend chapter 47, Revised Statutes, section 16, title husband and wife,” approved February 14,.1866 (Myers’s Supp. 728), which reads as follows:
“ Sec. 1. That on the joint petition of husband and wife, filed in a court having chancery jurisdiction within the county of their residence in this state, and on satisfactory evidence, the judge may make an order or decree to empower the wife to use, enjoy, sell, and convey, for her own benefit, any property she may own or acquire, free from the claim or debts of her husband; or to make contracts, sue and be sued, as a feme sole; or to trade in her own name; or to dispose of her property, by will or deed; either one or morp', or all of the powers herein enumerated, may be granted; but in all cases the wife’s property shall be liable to her debts, contracts, and liabilities; and before making any such order or decree, the court shall be satisfied that the application is not made by either husband or wife with intent to cheat, hinder, or delay the creditors of the husband, and that no creditor of the husband will be injured by making any such order or decree.
“Sec. 2. The court shall not have jurisdiction to make any such order or decree, as provided in the first section, until notice of the filing of the petition and object thereof shall be published at least ten days, in a newspaper designated by the court, and a copy of the notice and proof of publication shall be filed in the action; and any creditor of the husband shall have the right to be made a party to said action, and contest the making of a decree or order therein, as herein provided.”
It is contended for the appellee:
1. That the judgment of the Lincoln Circuit Court is void for want of jurisdiction in that court.
2. That she is not estopped to set up the invalidity of the judgment or to plead her coverture in defense of the action.
*547 3. That if the proceedings were regular and the judgment is valid, it gave her .no power to bind herself as the mere surety of a third person:
These questions will be disposed of in their order.
Two defects are pointed out, either of which, it is claimed, renders the judgment void. They are:
First. That it nowhere appears upon the record, by averment or proof, that Grigsby and wife were residents of Lincoln at any time during the pendency of the proceedings in the circuit court of that county.
Second. That the record exhibits no proof of the publication of notice of the filing of the petition and object thereof in the newspaper designated by the court.
The Lincoln Circuit Court was a court having chancery jurisdiction, and its jurisdiction of proceedings by residents of the county under the act supra was exclusive, and the case therefore falls within the principles announced in Jacobs’s adm’r v. L. & N. R. R. Co., 10 Bush, 267, and in Newcomb v. Newcomb, 13 Bush, 544. In the latter case it was said that “In regard to judgments of courts of general jurisdiction within the state, the same presumptions must be indulgéd in, whether the judgment or proceedings follow the common law, or are regulated by statute, unless the statute prescribes a different rule'for determining the validity of the judgment.”
The- statute regulating the granting of letters of administration provides that “ When any person shall die intestate, that court shall have jurisdiction to grant administration on his estate, that would have had jurisdiction to grant a certificate of the probate of his will, had he died testate,” and the statute regulating the probate of wills provides that the county court of the county of the testator’s residence shall have jurisdiction to probate his will; and in the former case it was held that the order granting administration was riot void because it did not show that the decedent was at his death a resident *548 of the county where letters of administration were granted, but it would be presumed, until the contrary was shown, that the court had jurisdiction.
These cases must be deemed conclusive of the question under consideration, and we pass to the second objection.
The court directed the necessary notice to be published in the Kentucky Advocate. What purports to be a copy of the notice published is found on file in the clerk’s office of the Lincoln Circuit Court with the papers of the case. The notice is over the names of Grigsby and his wife, and has appended to it what purports to be the affidavit of James R. Marrs, and to have been sworn to by him before “R. P. Jacobs.” The affidavit states that the affiant “is the publisher of the Kentucky Advocate newspaper, . . . and that the notice has had seven weekly insertions in said newspaper.”
There is nothing on the paper to indicate that R. P. Jacobs was an officer having authority to administer an oath, nor is there any thing to show where the oath was administered; and it is contended that there was therefore no evidence before the court that the notice had been published at all, and it is also contended that the notice was not shown, even by the statement of Marrs, to have been published for the length of time required by the statute.
The judgment recites that “The cause having been heard upon petition, exhibits, etc., and the notice of the filing of the petition and the objects thereof, heretofore ordered to be made in the Kentucky Advocate, having been filed with the affidavit of the editor of said paper that said notice had been published in said paper as required by law, and there being no objections filed against the prayer of the petition, it is therefore now adjudged that the petitioner, Susan P. Grigsby, be and she is hereby decreed and empowered to use and enjoy, sell and convey, for her own benefit, any property she may own or acquire, free from the claim or debts of her husband; to *549 make contracts, to sue and be sued as a feme sole, to trade in ber own name, and to dispose of' her property by will or deed.”
The supposed affidavit of Marrs was presented by the appellee and her husband as evidence of the publication of the notice in the manner therein stated, and the court accepted it as evidence of that fact, and proceeded to render judgment. The statute does not declare in what form evidence of the publication shall be presented, except that the requirement, that a copy of the notice and proof of publication shall be filed in the action, implies that the proof shall be in writing, but whether in the form of an affidavit or a deposition is not declared.
Both are recognized legal modes of making proof, and either must be deemed sufficient after it has been accepted and acted on by the court.
That it does not appear in the affidavit that R. P. Jacobs was an officer authorized to administer an oath, and if he was, that he administered the oath within the county or district of which he was an officer, are questions which can not be raised collaterally in this case. The paper was presented as evidence of a fact the statute required should be proved. It purported to be legal evidence, and the court accepted and acted on it as such, and caused it to be filed with the papers in the cause, and referred to it in the judgment. The court may have erred in receiving it as evidence, but the judgment is not, on that account, void.
But the publication of notice in the manner and for the time required by the statute was a prerequisite of jurisdiction. And there being in the record what purports to be a copy of the notice published, and evidence of the form of the notice and the number of times it was published in the newspaper, this must be taken to be the only notice published; and we can not presume in aid of the jurisdiction that any other notice was given, or that this one was published a greater number of times than is stated in the affidavit.
*550 It is only when the records of superior courts of general jurisdiction are silent as to jurisdictional facts, that the aid of presumptions can be invoked.
Presumptions are only indulged to supply the absence of evidence or averments respecting the facts presumed. When therefore the record states the evidence of a jurisdictional fact it will be understood to speak the truth on that point, and it will not be presumed that there was other or different evidence or that the fact was otherwise than as shown by the evidence. (Galpin v. Page, 18 Wall. 366.)
The notice shows that it was published over the names of the petitioners; that the year was not stated; and that it did not state when the court would be asked to make the judgment sought.
The statute does not provide in whose name the notice shall be given, and it is therefore not material, provided it be so given as to furnish, to those who may read it, the information the notice was designed to impart. The object was to inform any one who had a right and might desire to oppose the granting of the prayer of the petition, that such a petition had been filed, and where he might find it, and was as well accomplished by a notice over the name of the petitioners as over the name of the clerk or of a commissioner appointed for the purpose.
The petition was filed on the 23d day of October, 1867, and the order of publication was made on the same day; the notice states that the petition had been filed, and the affidavit of Marrs is dated December 9, 1867, and was sworn to on the same day, which shows that the publication was made between the first and last of these dates. The statute required at least ten days’notice before the judgment could be rendered; all persons interested must be taken to have known this provision of the statute, and when the terms, regular and special, of the Lincoln Circuit Court were held, and must be taken to have *551 had sufficient notice that the petitioners would be entitled to move the court, at its January term, to make the order, and were bound to appear at that term and make any objections they had to make — if sufficient notice was given before that time — and they were bound to know whether the length of notice required had been given or not.
The affidavit shows that the notice had seven weekly insertions in the newspaper in which it was ordered to be published. Learned counsel for the appellee contend that this was not sufficient. In this we can not concur. The requirement is that it “ shall be published at least ten days in a newspaper designated by the court.”
Appellee’s counsel contend that when such a noticé is published in a weekly paper it must be published for ten successive weeks, while one of the counsel for the appellant contends that it must be published in every issue of the designated paper during the ten days succeeding the first insertion, and another that a single insertion made ten days before the judgment is entered is sufficient.
In Andrews v. Railroad Co., 14 Ind. 169, the Supreme Court of Indiana held that when a statute required sixty days’ notice by publication in a newspaper, a single publication • sixty days prior to the time when the act was to be performed was sufficient — “ that the notice began to operate from the time it was given.”
In Hoboken v. Gear, 3 Duteher, 265, the Supreme Court of New Jersey held that when a municipal charter required every ordinance to be published for the space of twenty days in at least one newspaper before it should go into effect, it would be clearly sufficient if it be published in each number of the paper issued within twenty days, and that twenty days after a single insertion the ordinance would probably go into effect.
We are satisfied that publication in every issue of a paper *552 during ten consecutive days from the first insertion is sufficient ; and as there could not have been seven insertions in a weekly paper between the date of the order of publication and the date of Marr’s affidavit without a publication in each issue for at period of at least ten successive days, we need not decide whether a single insertion would have been sufficient.
We must therefore hold that the notice was sufficiently published, and consequently that the Lincoln Circuit Court had jurisdiction, and that the judgment conferred on Mrs. Grigsby all the powers authorized by the statute to be conferred, and which the judgment purports to confer; and it is therefore unnecessary to consider the question whether, having joined with her husband in seeking and obtaining the judgment, she would now be allowed to set up its invalidity in order to avoid contracts entered into with third persons who may have relied upon it, and dealt with her on the faith of it. M The only remaining question then is whether, notwithstanding her coverture, the statute and judgment pursuant to its provisions conferred upon her power to bind herself personally as the mere surety of a third person.
When this case was argued we felt a strong desire to find that the words of the statute would admit of some construction that would limit the power of married women, acting under its provisions, to bind themselves or their estates to such contracts as relate to their estates, or to some business carried on by them, or in any event to such as they might enter into as principals, and from which it is at least possible they may derive some benefit. But after a thorough examination, and careful consideration of the language of the statute and the law in respect to the powers of married women to bind their separate estates, as established by the decisions of this court prior to the enactment of the Revised Statutes, we have been unable to discover any tenable ground upon which to base such a construction.
*553 The language of the statute is, that the wife may be empowered “ to use, enjoy, sell, and convey, for her own benefit, any property she may own or acquire, free from the claim or debts of her husband; or to make contracts; sue and be sued as a feme sole, or to trade in her own name; or dispose of her property, by will or deed; either one or more, or all of the powers herein enumerated, may be granted.” s
The words “ for her own benefit ” can not be consistently held to limit her power to make sales of her property to such sales as are in fact beneficial to her. The obvious meaning is that the sales shall be for her benefit as contradistinguished from the benefit of her husband or his creditors, and to secure the proceeds to her, and not to limit the exercise of the powers conferred upon her. - -
Nor do we find a legislative policy in respect to the rights, powers, and liabilities of married women sufficiently stable and well defined, and having such bearing as to justify us in assuming that the legislature only intended to give power to make such contracts, as relate to the estate or business of the feme, or in which she is principal, or from which she may derive some pecuniary benefit.
On the contrary, so far as our legislation upon this most important subject has been sufficiently consistent to indicate a settled legislative pplicy, it indicates that policy to be to enlarge the rights of married women in respect- to their property, and to increase their power to charge and to sell it.
It would be a needless consumption of time to enumerate the different statutes which lead to this conclusion, or to' discuss their various provisions. The language of the statute under which Mrs. Grigsby was empowered to contract leaves little for construction’. It declared in terms that she might be empowered to make contracts as a feme sole. That power was conferred upon her by a valid judgment of the Lincoln *554 Circuit Court. Without the statute she had no power to make a contract valid for any purpose except to charge any separate estate she might own. The sole object of so much of the statute as confers power to make contracts as a feme was to remove the disability of coverture. Unless it means that, it means nothing.
Power “ to make contracts ” ex vi termini includes power to make any lawful contract. That the power is conferred upon a married woman can not be made a ground for restricting its scope. All idea of such restriction is excluded by the words “as a feme sole” As to the powers conferred her disabilities are swept away. In their exercise she has all the powers she would have possessed, without febe statute, had she been unmarried.
Power to make a contract necessarily subjects the person possessing thte power to the obligations legally incident to the contract made in the exercise of the power; and a married woman authorized by statute to contract as a feme sole is bound as a feme sole upon any contract she may make under the power, and is subject to all the remedies to which she would have been subject if unmarried.
By the common law the contracts of married women for the payment of money were void, and were only valid in equity as charges upon what was technically called separate estate.
The law would not enforce such contracts, because it did not recognize the power of the feme to make them; but when the law has expressly authorized them fcr make contracts as if sole, then it can no longer withhold its aid in enforcing such contracts. The ground upon which its refusal has been heretofore based is swept away.
The law judge can no longer say this person had no legal capacity to make a contract. The law itself expressly declares she has, and having legal capacity to contract, she is legally *555 liable on any contract for the payment of money on which she would be liable if she were unmarried.
Wherefore ()the judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.