WADSWORTH *v.* HENDERSON, Ex'r, etc.

*(Circuit Court, D. Kentucky. May 29, 1883.)*

1. JUDGMENT AGAINST MARRIED WOMAN.
   Where a married woman has inherited, under the laws of another state, property from her father, for whose debt she is also made liable by the laws of that state, and she afterwards being domiciled in this state is sued here upon a note executed by her father there, judgment may be rendered against her here, which will be enforced by the common-law remedy proper in case a valid contract had been made in this state.

2. AGAINST HER HUSBAND FOR HER DEBT.
   Judgment may also be rendered against her husband, but as to him to be paid out of assets which may come into his hands *thereafter* (none having been as yet received by him) by reason of the marriage relation.

At Law.

*Wilby & Wald, Julius Aroni, James Harlan,* and *A. E. Wilson,* for plaintiff.

*T. L. Bayne, Barnett, Noble & Barnett,* and *Walter Evans,* for defendants.

BARR, J. The motions to be disposed of are the motion of defendants McCarthy and wife to arrest the judgment, and plaintiff's motion to enter judgment on the verdicts of the jury.

It appears from the statement of defendant McCarthy, made since the findings of the jury, that he and his wife were married in the city of New Orleans, and were domiciled there at the death of William Henderson, and until after she accepted the succession of his estate. They removed to Kentucky in 1872, and have been domiciled here ever since. McCarthy also proved that the property which his wife received from her father is real estate in the city of New Orleans, and that he has never received any money or property from

her. This statement that their marriage and domicile at the death of, and the time of the acceptance of the succession of the estate of, William Henderson were in Louisiana, makes the law of that state control, both as to the marital rights of McCarthy in the property received, and as to the liability which arose from the acceptance of the succession. Mrs. McCarthy, having accepted the succession, pure and simple, without the benefit of inventory, became, by the Louisiana law, personally obligated for her proportion, one-eighth, of her father's debt. La. Code, 1013. The property which she received by the succession was paraphernal property, over which her husband had no control or interest unless by her consent; neither did her acceptance of the succession obligate him to pay any part of the decedent's debts. La. Code, §§ 2383–2391. If I understand the Louisiana Code, Mrs. McCarthy could have refused this succession, or accepted with the benefit of inventory. In the latter case, her liability would have been limited to the assets received.

"The effect of the simple acceptance of the succession * * * is such that, when made by an heir of age, it binds him to the payment of all debts of the succession, not only out of the effects which have fallen to him from the succession, but even personally, and out of his own property, as if he had himself contracted the debts." Section 1013. This liability could only be taken by an heir of age, and could be accepted by a married woman with the concurrence of her husband. It is entirely a voluntary act upon the part of the heir, and creates a personal liability. The effect of the act of acceptance is prescribed or rather defined by this section of the Code, but the act itself is voluntarily, and hence the obligation which the acceptance creates is in the nature of a contract voluntarily entered into. All jurists agree that the personal capacity of a contractor to contract is governed either by his domicile or the *lex loci contractus*. They disagree as to which law governs, but in this case they were the same, and hence it is unnecessary to consider which law controls.

Mrs. McCarthy's personal obligation to pay her share of her father's debts, and her husband's non-liability by the Louisiana law to pay any part of them, being admitted, the troublesome question is, what, if any, remedy has the plaintiff in Kentucky on this verdict rendered on a note executed by her father?

The learned counsel for defendant insist that this obligation is cast upon her by statute, and that it can have no extraterritorial effect, and will not be enforced in another state. If this were true, I doubt if such would be the law. *Dennick* v. *Railroad Co.* 103 U. S. 11.

But Mrs. McCarthy's acceptance was her voluntary act, and her liability is because of her acceptance of the succession in the manner she did. Her obligation is not a mere statutory one, but in the nature of a contract. The Kentucky law does not permit a married woman to contract, except when she is made a *feme sole* trader. She may bind her general and separate estate under certain circumstances, but, ordinarily, is not liable personally, nor to a personal judgment, either at law or in equity. The law of Kentucky not having permitted contracts by married women heretofore, has not provided an express remedy to enforce such contracts. But if there is a valid contract of a married woman, valid because of the comity between the states, may not the courts enforce this valid contract by a proper remedy? There is nothing in the statutes of the state which prohibits a remedy on such contracts, but, on the contrary, whenever the state has allowed married women to make personal contracts, the courts have enforced such contracts by the usual and appropriate remedies.

In *Hart* v. *Grigsby*, 14 Bush, 542, the court of appeals decided that a personal judgment was proper against a married woman who had been, by proper proceedings under the statutes, decreed to be a *feme sole* trader. The court uses this language, (p. 554,) which is very pertinent to the question under consideration:

" By the common law the contracts of married women for the payment of money were void, and were only valid in equity as charges upon what was technically called separate estate. The law would not enforce such contracts, because it did not recognize the power of the *feme* to make them; but when the law has expressly authorized them to make contracts as if *sole*, then it can no longer withhold its aid in enforcing such contracts. The ground upon which its refusal has been heretofore based is swept away. The law judge can no longer say this person had no legal capacity to make a contract. The law itself expressly declares she has; and having legal capacity to contract, she is legally liable on any contract for the payment of money on which she would be liable if she were unmarried."

In the recent case of *Gibson* v. *Sublett*, in the superior court, 1 Ky. Law Rep. & J. 730, that court affirmed a judgment which subjected the real estate of the wife located in this state. The wife, with her husband, was domiciled in Louisiana, and executed a note there jointly with her husband to a citizen of Kentucky. The wife pleaded her coverture, and although there was no cross-appeal the court strongly intimated that a personal judgment against the wife would have been sustained.

This is the logical result of the reasoning of the court, because there is no other or greater authority for subjecting the wife's real estate than there is for entering a common-law judgment against her.

Mrs. McCarthy having the legal capacity to contract by the Louisiana law, and having contracted, it would seem, upon the authority of these cases and upon reason, that this court cannot withhold its aid in enforcing her contract or obligation. This should be done by the common-law remedy, which would be proper had a valid contract been made in Kentucky. The next question is, what, if any, judgment can be rendered against Mrs. McCarthy? This succession was accepted by Mrs. McCarthy with her husband's consent; but that did not make him in any way personally liable for the debts of her father; neither did he have any interest in or control over the property received by her from her father. The Kentucky law, which is the governing law as to the remedy, requires that he should be sued with his wife. Ky. Civil Code, § 34.

The change of their domicile by defendant McCarthy and wife did not change her right to the property which she received under this succession. *Beard's Ex'r* v. *Bayse*, 7 B. Mon. 141. But he, while domiciled here, is entitled by the Kentucky law to his wife's personal property acquired in Kentucky, which does not arise from the income of her Louisiana property or from her separate estate. The Kentucky law governs as to this. Whart. Confl. Laws, §§ 196–198; *Gale* v. *Davis' Heirs*, 4 Martin, 645.

The original reason for making a husband liable for his wife's debts, created before her marriage, was differently stated. Bishop says "that the obligation comes from the rule of practice which forbids the wife to be sued alone, and requires the joinder of the husband with her 'for conformity.'" 2 Bish. Mar. Wom. § 312.

The reason given by the Kentucky court of appeals is that the debtor was liable to be imprisoned for the debt, and as the husband was entitled to the wife's personal property, and the usufruct of her real estate, the law would not, by imprisoning her alone, place her in a condition altogether dependent on the good-will of her husband. *Fultz* v. *Fax*, 9 B. Mon. 500. Whatever may have been originally the reason for the husband's liability for his wife's debts, the legislature of this state legislated upon the idea that the liability is based upon the property received by the husband from his wife, and have now limited it to the value of the estate received by the husband from her. Gen. St. c. 52, § 4.

Under the provisions of this act personal judgments have been rendered for the antenuptial debts of the wife against the wife and husband. The husband's liability was only to the extent of property received from his wife. *Fultz* v. *Fax,* 9 B. Mon. 500; *Beaumont* v. *Miller,* 1 Metc. (Ky.) 68.

This debt is not an antenuptial debt, but it was contracted by the wife, when and where she had a right to make a valid contract, and in principle is very analogous to antenuptial debts, in so far as a husband may by the Kentucky law take his wife's property. The Kentucky law gives the husband his wife's personal, general estate, and he should be liable for the wife's debts to the extent of property received from her.

The Kentucky law requires the husband to be joined with his wife in this action. If the obligation of the husband for his wife's debts comes from the necessity of his being joined in the suit "for conformity," as claimed by Mr. Bishop, then there should be a judgment against McCarthy as well as against his wife. This judgment should not in either view go further than to subject or make him liable for estate received of his wife by reason of the marital relation.

In considering this question, I have not overlooked the case of *Morse* v. *Toppan,* 3 Gray, 411, in which the court says that "a judgment is in the nature of a contract; it is a specialty, and creates a debt, and to have that effect it must be taken against one capable of contracting a debt." A judgment is a contract in the sense that it may be sued upon in another judicial tribunal, but it is not a contract in that it can only be rendered against a party *then* capable of contracting a specialty debt. It is not true that a judgment rests either upon the will or the capacity to contract of the party against whom it is rendered. Freem. Judgm. § 4. If a judgment is a contract, and can only be rendered against one who is then capable of contracting, by the laws of the forum there could not be a judgment on a contract made in another state, unless by the law of the forum that contract would be valid. This would destroy the rule of comity and international law which makes the validity of a contract and the capacity of the contractor depend on the place where the contract is made or is to be performed, or the domicile of the contractor, as the case may be, and not upon the law of the forum. The doctrine, as announced in *Morse* v. *Toppan, supra,* has been ignored in *Milliken* v. *Pratt,* 125 Mass. 374, where the court sustained a judgment against a married woman living in Massachusetts on a contract made in Maine, although at the time of making the contract she could not

have made a similar one at the place of her domicile. It is true that at the time of the judgment she could have made such a contract in Massachusetts, but no notice was taken of this fact by the court. The Kentucky cases in which judgments have been allowed against married women on antenuptial contracts have, of course, disregarded the theory that it is necessary that the person against whom a judgment is rendered should then have capacity to contract. In these cases the wife had lost all capacity of contracting by reason of the marriage. See, also, *Husbands* v. *Bullock*, 1 Duvall, 21. The plaintiff may have judgment against Mrs. McCarthy, and also against defendant, her husband, but as to him only to the extent of assets which he may hereafter receive from his wife by reason of his relation of husband.