JUANA BETANCOURT HERNÁNDEZ, Plaintiff and Appellee, *v.* CONSUELO GONZÁLEZ WIDOW OF PIERAS, Defendant and Appellant.

No. 7656.   Argued March 16, 1939.—Decided March 17, 1939.

*Angel A. Vázquez* for appellant.   *Francisco H. Susoni, Jr.,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This case involves a homestead claim which was decided in favor of the plaintiff, Juana Betancourt widow of Pérez.

The facts as they appear from the certificate of the Registrar of Property of San Juan and presented in evidence by the defendant, are as follows:

On April 14, 1924, there were entered in the Registry the first and second records of property No. 2576 which consists of one half part of a lot that its owner Nicasia García segregated and sold for $175 to Manuel Vega. The latter began to build a house on the lot and mortgaged the house and lot to Emilia Surís Cardona to secure $550, which he borrowed from her for one year.

On July 29, 1924, Vega sold the property to Juan Pérez, the husband of Juana Betancourt, the plaintiff, for $1,500 of which the vendor admitted having received one thousand, leaving the remaining five hundred in the hands of the vendee

to discharge the mortgage executed in favor of Emilia Surís, of which payment he took charge.

By deed of December 4, 1924, Pérez and his wife mortgaged the property to Consuelo González widow of Pieras, the defendant, to secure one thousand dollars loaned from her, and two hundred and fifty dollars more for costs and interests, and

by deed of that same date Emilia Surís Cardona cancelled her mortgage.

Nothing expressly appears from the Registry concerning the homestead right nor as to the use that should have been made of the money loaned by the defendant.

What did the oral evidence show?

That of the plaintiff is summed up in the statement of the case, as follows:

"Testimony given under oath by Juana Betancourt, who said, in short, upon questions by plaintiff: that she was the wife of Juan Pérez Serrano, with whom she had six children named Eva, Andrés, Antonia, Socorro, Ramón and Rita; that all are under age and live with, are supported by, and depend upon her, her husband having died in 1930; that she and her husband were the owners of the property in litigation, and went to live there when they purchased it; that at present they do not live on the property because she and her six children were ousted by the marshal; that she and her husband have owned no other property; that in the mortgage deed for $1,000.00 that she and her husband executed in favor of Consuelo González they did not waive their homestead; that she and her husband purchased that property while married."

And that of the defendant as follows:

"Testimony given under oath by Ernesto Ruiz, who said, in short, upon questions by the defendant, that in December, 1924, he was an 'agent,' and that besides acting for other persons, he loaned money acting for Consuelo González, the defendant; that on the first days of December, Juan Pérez Serrano came to him and told him that he owed some money from the purchase price of his home, for which amount Emilia Surís had a mortgage; that they were going to foreclose that mortgage and therefore needed a loan of $1,000.00 to pay

it, and to pay the taxes due and repair the house; that he went to see the property and finding it sufficient security for the loan, he told Consuelo González who accepted it; that on that same month of December Pérez Serrano, his wife, Consuelo González, and also the mortgage creditor, Mrs. Surís, and the declarant, came to the office of public notary Julio César González, and there he delivered to Mrs. González theone thousand dollars and out of them, then and there, the $550 of the mortgage paid to Mrs. Surís, and over one hundred dollars were left in the hands of Mrs. González to pay the was taxes due on the property, which were paid, and the remaining amount was given to Pérez Serrano, and the mortgage and mortgage cancellation deeds were then signed; that subsequently the declarant went to the home of Pérez Serrano and noticed that with the remaining money the repairs in question had been effected, and a penthouse constructed, and that some time ago he had a talk with the plaintiff and she admitted that the remaining money had been invested in repairing the house and constructing the penthouse in question.''

The party plaintiff testified then, and said:

'' . . . that Ernesto Ruiz was not present when the mortgage deed in favor of Consuelo González and the deed to cancel the mortgage of Mrs. Surís were signed; that the first time she saw Ruiz was some time ago at the home of Consuelo González; that the money due on Mrs. Surís' mortgage was paid in small installments by the husband of the declarant, who was a merchant; that the money from the mortgage of Consuelo González was used by the husband of the declarant in his business.''

In deciding the conflict between both declarations and in weighing the documentary evidence, the trial court said in its opinion:

''In our opinion, no relation exists between the first mortgage executed in behalf of Emilia Surís Cardona and the second mortgage executed in favor of the defendant in this case. There is no evidence to show that the parties to the second contract of loan reduced as part of the purchase price of property the $550 of the first mortgage. This defense of the defendant is very subtle. We also find no evidence, except the testimony of Ernesto Ruiz, who is a business agent, and states that the money from the second mortgage was received by the debtors' to improve the house: and the most this witness said was that the mortgage was used to pay taxes and to pay the first loan

made by Mrs. Cardona; but that witness was contradicted by the very plaintiff who stated that when the mortgage was executed they lived in the house, where they had always lived from the day it was purchased, and that the money was used by the husband in his business and not in repairs, improvements, or payment of taxes. There is no allegation, because none exists, nor does it appear from the certificate from the Registry of Property, that the homestead right had been waived, if said right can be waived in this case, and the testimony of the plaintiff is so naive and so simple that it casts serious doubts as to whether Ruiz, the agent who took part in the execution of the second mortgage, was necessarily present when the transaction took place. The certificate from the Registry is clear and final. There exist none of the exceptions pointed out by the Homestead Act that would bar the homestead right claimed by the plaintiff, who is the head of a family and occupied the house after the death of her husband for the benefit of her children. It is testimony that has not been contradicted by the defendant and that deserves all the court's credit. It was also proved that the contract of loan, secured by the mortgage which was entered into by the plaintiff and her husband and the defendant, was executed while the former lived there with their family. The deed where the transaction is set forth does not contain, because it does not appear from the Registry, any alteration or variation tending to impair the homestead right acknowledged by law to every head of family, who has a family, and resides or occupies the premises with his family. The defendant knew or should have known, and when entering into the contract should have borne in mind the homestead right of the donees to the contract.''

Feeling aggrieved, the defendant requested the district court to reconsider its judgment. The reconsideration was substantially denied and then appealed to this Supreme Court. He assigns four errors in his brief that, in his opinion, were committed by the trial court, 1, in deciding the conflict existing between the testimony of the plaintiff and of witness Ruiz, 2, refusing to reconsider its judgment, 3, in sustaining the complaint, 4, in adjudging her to pay $500 without any evidence tending to show that the property was sold for a larger amount.

In deciding a motion filed by the defendant, the district court favorably reconsidered its judgment as to the costs

and reaffirmed its opinion concerning the homestead claim. The second assignment is, therefore, frivolous. It is included in the others.

We acknowledge the reasoning of the appellant concerning the decision rendered by the trial judge regarding the conflict of the evidence, it is strong, but not enough to convince us that said decision is erroneous. For that reason, we can not, nor feel inclined to, alter it.

Concerning the legal concept applied by the district court to the facts of the case, as found from the evidence introduced, we think that it is well founded in law and jurisprudence. It will suffice to refer to the case of *Aldea* v. *Tomás y Piñán*, 51 P.R.R. ____, where it is said:

"But there is more. It is admitted that neither at the time of giving the mortgage to Gayol nor when contracting afterwards with the ancestor of the defendants was there any waiver of the homestead right on the part of the spouses Pozada–Aldea. It is also admitted that there was no agreement regarding any subrogation of Mrs. Piñán to the rights of Gayol. At the most it might be concluded that it had been shown that the spouses Pozada–Aldea, being in need of funds to settle with Gayol, applied to Mrs. Piñán for a loan which they obtained from her by an ordinary independent contract of a loan secured by mortgage, without any stipulation as to the application to be given to the money lent. The application of the money, even admitting as true the testimony of defendant Caneja, can not be considered to have been a condition for the execution of the contract. According to the jurisprudence such transactions are not among those exempted by a statute like ours from the enforcement of a homestead right.

"In *Engaard* v. *Schmidt*, 171 N. W. 905, 906, the Supreme Court of Nebraska expressed itself as follows:

" 'The fact that a married man borrowed money and told the lender at the time that he intended to use the money, or a part of it, to pay for a homestead previously purchased and conveyed, and the money is actually used for that purpose, is not sufficient when standing alone to entitle the lender to a lien for the purchase price. In the present case the parties did not stand in the relation of vendor and purchaser, nor was a vendor's or other lien created. The debt was created and conveyances delivered long before the loan was made.

Plaintiff did not pay the debt at the instance of the debtor, but merely loaned the money directly to him without agreement respecting the use to which it was to be applied. *Rodman* v. *Sanders,* 44 Ark. 504; *Griffin* v. *Proctor's Adm'r,* 14 Bush (Ky.) 551; *Carey* v. *Boyle,* 53 Wis. 574, 581, 11 N. W. 47.'

"The case of Ruiz v. Barreto, 46 P.R.R. —— has not the import attached to it by the trial court and by the appellees. Perhaps we ought to have been more specific there, but there was no need for it then, because the decision rendered therein was in favor of the recognition of the homestead right. Our opinion in the above case should be construed in harmony with the present one. If both parties agree that the money lent is to be applied wholly or in part to the discharge of the debt or lien incurred for ·the purchase of the property or for the improvement thereon (*proviso* of section 4 of the Homestead Act, Code of Civil Procedure, 1933 ed., p. 307), and is actually so applied, then the use to be made and actually made of the proceeds of the loan is and must be considered as one of the terms of the contract which subrogates the new lender to the rights of the former as to the homestead."

Not having, therefore, believed the testimony of Ernesto Ruiz, and having believed that of the plaintiff, we must conclude that there was not such contract as would throw the case among the exceptions. What appears from the record is a simple operation of a loan secured by a mortgage which does not destroy the mortgage right which, on the other hand, has been duly constituted.

As to the fact that it was not proved that the mortgaged property was sold for more than $500, one must admit that the appellant is correct in its contention that the selling price does not appear from the evidence, but the aforesaid is unimportant because it is not the sale value what must be considered, but the value of the property, and concerning that of the property there is sufficient evidence to conclude that it was at least three times as large as that amount.

In the very case of *Aldea* v. *Tomás y Piñán, supra,* at page ____, it is stated:

"The right of homestead is recognized by law. Its nature has been repeatedly defined in decisions of this court. It is enjoyed

478

upon the property but only to the extent and value of $500, and where the property is sold owing to the fact that its value exceeds the said amount in order to discharge the liabilities of the owner not exempt from execution, it becomes restricted to $500.''

The appeal must be dismissed and the judgment appealed from affirmed.