CAREY vs. BOYLE and another.

*November 23 — December 13, 1881.*

VENDOR'S LIEN.    *When person advancing purchase money entitled to such lien.*

1. A. purchased 120 acres of land, for the benefit of B., and paid the purchase money, and had the deed made to B. The deed was left with A., and, upon B.'s paying back to A. part of the consideration money, and giving A. his notes for the remainder, the deed was delivered to B., and he went into possession of the land. *Held,* that, in the view of equity, A. and B. stood in the relation of vendor and purchaser of the land, and the former had a vendor's lien for the amount of the unpaid notes.

2. Even if A. is to be regarded as a stranger to the title, who merely advanced money to B. for the sole purpose (as understood by both) of enabling the latter to purchase the land, he is entitled, by the law of this state, to be *subrogated* to the rights of the vendor. *Jones v. Parker,* 51 Wis., 218.

3. The extension of this equity to a third person is strictly confined to those who furnish or advance the purchase money to the purchaser in such a manner that they can be said either to have paid it, or caused it to be paid, to the vendor, on behalf or for the benefit of the purchaser.

4. The provision of sec. 2983, R. S., which subjects the homestead to "purchase-money liens," must be construed as embracing cases of the kind above described.

5. Before payment of his notes to A., B. died, while occupying forty acres of the land as homestead; and soon afterward his wife also died, without issue, and her heir went into possession of the homestead forty. A. proved his notes as a claim against B.'s estate, and, on an administrator's sale of the eighty acres which was not homestead, to pay the debts of the estate, received from the proceeds, as his distributive share thereof, twenty per cent. of the amount of such claim. In this action he seeks to enforce a lien on the homestead for the balance of his claim. *Held*, that as he had originally a lien, prior to the rights of all other creditors of the estate, upon the whole property, and as, in the enforcement of that lien, the eighty acres would have been sold first to pay his claim (under sec. 3163, R. S.), and the homestead would have been subject to sale for only so much of the claim as then remained unsatisfied, his waiver of such paramount right as to the eighty acres does not enlarge his rights against the homestead; and he is entitled to a sale thereof for only so much of his claim as remains after deducting the full amount for which the eighty was sold at the administrator's sale.

APPEAL from the Circuit Court for *Waushara* County.

The defendants appealed from a judgment establishing a vendor's lien in favor of the plaintiff, *James Carey*, upon forty acres of land owned and occupied as a homestead by the defendants. The case is stated in the opinion.

For the appellants there was a brief by *Finch & Barber* and *M. L. Kimball*, and oral argument by *Mr. Barber:*

1. No vendor's lien was established. A person who advances money to a purchaser to enable him to buy land, cannot claim the benefit of a vendor's lien. 1 Herman on Mortgages, § 185; *Stansell v. Roberts*, 13 Ohio, 148; *Crane v. Caldwell*, 14 Ill., 468; *Burnap v. Cook*, 16 Iowa, 149; *Truesdell v. Callaway*, 6 Mo., 605; *Nottes's Appeal*, 45 Pa. St., 362; *Eyster v. Hatheway*, 50 Ill., 521; 1 Jones on Mortgages, §§ 212–218; *Pearl v. Hervey*, 70 Mo., 160; *Skaggs v. Nelson*, 25 Miss., 88; Washb. on R. P., 537, 540; Sugden on Vendors, 65, 74; Thomas on Mortgages, 27; Willard's Eq. Jur., 302. 2. By proving his claim against the debtor's general estate, the

plaintiff waived all claim for a lien upon the real estate. See *Edgerton v. Schneider*, 26 Wis., 385; *Morris v. Rexford*, 18 N. Y., 557; *Butler v. Miller*, 1 id., 503; *Carter v. Smith*, 23 Wis., 497; *Weed v. Page*, 7 id., 503.

For the respondent there was a brief by *E. P. Smith* and *Nath. Pereles & Sons*, and oral argument by *Mr. Smith*. They argued, among other things, that the case should be regarded as if *James Carey* himself had made the deed to Patrick, after himself receiving a deed of the land and paying therefor. As between the plaintiff and Patrick Carey, the consideration of the notes was the land, and nothing else. Equity disregards forms, looks only to the substance, and regards that as done which ought to be done, in order to avoid circuity or technical objection. *Johns v. Sewell*, 33 Ind., 1, 4; *Whetsel v. Roberts*, 31 Ohio St., 503; *Murphy v. Crouch*, 24 Wis., 367; *Jones v. Parker*, 51 id., 218. The case, however, would not be changed had the contract of sale been made by the former owner directly with Patrick Carey, and had the plaintiff advanced to him the purchase money, borrowed for that specific purpose. *Jones v. Parker*, 51 Wis., 218; *Magee v. Magee*, 51 Ill., 500; *Kaiser v. Lembeck*, 7 N. W. Rep., 519; *Silsbe v. Lucas*, 36 Ill., 462; *Austin v. Underwood*, 37 id., 438; *Allen v. Hawley*, 66 id., 164; *Carr v. Caldwell*, 10 Cal., 385; *Nichols v. Overacker*, 16 Kans., 54; *Pinchain v. Callard*, 13 Texas, 333; *Hamrick v. People's Bank*, 54 Ga., 502; *Clark v. Munroe*, 14 Mass., 351; *Jackson v. Austin*, 15 Johns., 477; *Seward v. Jackson*, 8 Cow., 431; *Rutland v. Brister*, 53 Miss., 683; *Russell v. Watt*, 41 id., 602.

ORTON, J. The findings of the circuit court, which, we think, were warranted by the evidence, are, in brief and substance, as follows: *James Carey*, the respondent, purchased the 120 acres of land, intended for the benefit of his brother Patrick, and paid the purchase money, and directed the deed to be made to Patrick. This was done, and the deed was left with *James*,

and, on Patrick's paying part of the consideration money back to *James* in a landed interest which he held by inheritance, of the agreed value of one-half of it, and executing his notes on long time for the balance, was delivered to him. Patrick went into possession, and soon thereafter died, while occupying forty acres of the land as a homestead; and soon thereafter his wife, Mary Ann, died without issue, and *Michael Boyle,* one of the appellants, inherited as her heir, and went into possession of the homestead forty acres. . In the course of the administration of Patrick's estate, *James* presented and proved said notes as claims against it, and, on sale of eighty acres of said land, not a homestead, received from the product thereof twenty per cent. of the amount of said notes and interest as his distributive share thereof. *James Carey,* the respondent in this suit, prays for the establishment of an equitable lien on the homestead forty acres for the balance of such unpaid purchase money. ' The reason why the transaction took this form was, that Patrick was unable to purchase the land and pay at that time the consideration money, and *James* desired to assist him in obtaining the land. On these facts a few self-evident observations may be made, which may subserve the application of the proper equitable principles and authorities: (1) Although, strictly speaking, *James* was not the vendee of the land, in the sense of being the grantee in the first place, or the vendor in the sense of being the grantor to Patrick, yet, in the common acceptation of the term, he was the *purchaser* from the *seller* or vendor, and the seller or vendor to *James* as the purchaser from him. (2) There was no privity except by the deed between Patrick and the original vendor, and no contract of sale or purchase as between them. (3) Patrick purchased of *James,* and by a contract in respect to the consideration materially different from that between *James* and the grantor. (4) The consideration or purchase money, so far as Patrick was concerned, was that which passed or was to pass directly from him to *James,* independent and distinct from that which passed

between *James* and the grantor.    (5) It follows that, so far as *James* and Patrick were concerned in the transaction, *James* was the seller and Patrick the purchaser, and these unpaid notes of Patrick to *James* are the evidence of the unpaid purchase money of the land.    (6) This is a stronger case than if *James* had intervened only to furnish to Patrick the purchase money to be paid by him to the grantor in the deed on his own purchase directly from the grantor; and, if it does not place *James* and Patrick strictly in the attitude and relation of vendor and vendee, it does place them in the relation of seller and purchaser, and, so far as the equitable principle of a vendor's lien for the purchase money is concerned, they occupy the relation, substantially, of vendor and purchaser, and no possible distinction can be made except that which is clearly nominal and technical. It is the same, in substance, as if *James* had taken the deed directly to himself and then deeded to Patrick.

In courts of equity, names merely, and legal definitions and distinctions, will not stand in the way of substantial equities, clearly established, and forms are disregarded, and the substance only is considered in the application of equitable principles, and especially in the enforcement of a vendor's lien for purchase money.    *Jones v. Parker*, 51 Wis., 218.    In the true sense of this principle, so far as *James* and Patrick are concerned, they occupy the relation of vendor and purchaser in carrying into execution an independent contract of sale between themselves alone, different in terms from the contract of sale between. *James* and the grantor in the deed; and there is no substantial reason why the principle and authorities which apply to a vendor's lien for the purchase money, should not directly apply to this case.    If this is so, then there is no contention as to the right of the respondent *James* to enforce his lien for the unpaid purchase money upon the remaining forty acres, divested of the homestead right of the appellants, which they inherited from the widow of *James*.

But it is contended that the respondent stood in the atti-

tude of a stranger, merely furnishing to Patrick Carey the consideration for the purchase of the land; and his right to an equitable lien upon the land for the purchase money so furnished is contested on the ground that such a lien is strictly a *personal* one, and limited to the vendor himself. Treating the respondent, therefore, as a stranger or third person who advanced or loaned to the purchaser the money for the express purpose of paying, and for no other purpose, and which is actually paid to the vendor by him, or by his directions, as the consideration for the purchase of the land, is he substituted or subrogated to the right of the vendor to an equitable lien upon the land for such purchase money? Such a right, according to many elementary writers, cannot be asserted on any just or equitable principle, because it is supposed to give an unjust preference to a mere creditor, and a right paramount to that of dower or preëmption, not possessed by other creditors, and creates in him a secret trust which may mislead, deceive or defraud other creditors. But all of these consequences may follow the vendor's equitable lien, and the only difference that is apparent in the two cases is the facility of ascertaining the existence of such a secret lien, which is, perhaps, greater in the case of the non-payment of the purchase money proper than of the non-payment of the money borrowed from a stranger, paid as the purchase money. In both cases the lien is enforced against volunteers and purchasers with notice alike, and others are alike protected from its operation.

The principle in either case is very much questioned, and in many of the states it is not recognized, which may have led many courts to doubt the expediency of its extension beyond the immediate parties to the sale; and its extension to third persons furnishing the purchase money under such circumstances cannot, perhaps, be said to be sustained by mere weight of authority, so much are the courts in conflict upon the question. However, so far as this state is concerned, it

must be considered as a settled question that such third persons are entitled to the full benefit of the vendor's lien.

In *Jones v. Parker, supra,* a son bought land of his father, and at the time of the purchase the son borrowed part of the consideration money of the plaintiff, who was present, and paid it to his father while all three were present; and upon obtaining the deed he and his wife gave the plaintiff a mortgage on the land to secure the loan. The mortgage became due, and the time of payment was extended and a new mortgage given as a substitute for the old one, and the old one was cancelled; but this last mortgage was not executed by the wife. The question was, whether this last mortgage was a full substitute for the first, and of equal value as a security for the money, in respect to forty acres of the land, which was the homestead of the son and his wife, and in respect to the wife's dower.

On this question, Mr. Justice LYON said, in the opinion: "The substitution did not and could not change the character of the original transaction. Without the signature of the wife, the first mortgage would have been a valid lien on all the land; for when it was executed no part of the land was the homestead of the mortgagors. Neither would the wife have had any right of dower as against the mortgage, because it was for *purchase* money." To this, section 2163, R. S., is cited, which provides in effect that the widow of the mortgagor shall have no dower against a mortgage for the purchase money; thus holding that this section embraces purchase money furnished by another and secured by mortgage on the land purchased, as well as purchase money owing by the purchaser directly to the vendor and secured by mortgage. It is said in the opinion, also: "In substance and legal effect, the transaction was the same as though the mortgage had been executed to the father for the purchase money, and by him assigned to the plaintiff."

The transaction was quite similar to that of the parties in

this case, conceding that Patrick Carey was the original purchaser of the land and borrowed the purchase money of his brother *James*, and paid it himself to the grantor in the deed in the presence of *James;* and the principle is precisely the same in both cases. The opinion refers to the case recently decided by the supreme court of Iowa, of *Kaiser v. Lembeck*, 7 N. W. Rep., 519. In that case it was held that a mortgage executed to a third person to secure the purchase money for the premises mortgaged is entitled to priority over other liens prior in point of time, the same as if such mortgage had been given directly to the vendor. In the opinion in that case the following authorities are cited as in point: *Clark v. Munroe*, 14 Mass., 351; *Kittle v. Van Dyck*, 1 Sandf. Ch., 76; *Adams v. Hill*, 9 Foster (N. H.), 202; 4 Kent's Comm., 39; *Jackson v. Austin*, 15 Johns., 477; *Haywood & Nooney*, 3 Barb., 645; *Curtis v. Root*, 20 Ill., 53. It must be understood that the extension of this equity to a third person is strictly confined to those who furnish or advance the purchase money to the purchaser in such manner that they can be said either to have paid it to the vendor, personally, or caused it to be paid, on behalf or for the benefit of the purchaser; and to this extent they become parties to the transaction. It must not be a general loan, to be used by the purchaser to pay the consideration of the purchase or to be used for any other purpose at his pleasure. In such case, the simple fact that the money can be traced into the land as having been paid by the purchaser to the vendor as the whole or part of the purchase money, gives the person who loaned it no such right.

This is the distinction made in many of the cases, and especially by the supreme court of Illinois. In *Austin v. Underwood*, 37 Ill., 438, the purchaser procured a third person to pay the purchase money for land which became part of the homestead of the purchaser; and it was held that it became a lien upon the homestead, and the distinction was taken between such a case and where the money was loaned to pay a preëxisting debt created for the purchase of the homestead.

In *Magee v. Magee*, 51 Ill., 500, the money was paid by the third person directly to the agent of the vendor, upon notes given for the purchase money by the purchaser, and it was held an equitable lien upon the homestead and within the meaning of the statute. In *Eyster v. Hatheway*, 50 Ill., 521, it was a general loan, which was used in paying the purchase money, and it was held no lien. This last case was cited by the learned counsel of the appellant, and agrees with many other cases resting on the same ground.

It may be said here that the provision of the statute in section 2983, R. S., which subjects the homestead to "purchase-money liens," must be construed to embrace cases where the purchase money is furnished and paid, as the consideration for the homestead, by a third person, in such way that it can be said to have procured it for the purchaser, which is the reason of the rule. This doctrine is thus stated by Herman, in his work on Mortgages, although not favored by him: "A loan made for the purpose of assisting a vendee in obtaining title is purchase money, and gives the loaner a vendor's lien on the property purchased." Herman on Mortg., § 185, and authorities cited in note 3. This, perhaps, is too broad a statement of the rule, and might admit cases where it was not the understanding of both parties that the money loaned was to be so applied; but the rule thus stated is sanctioned by many respectable authorities. The present case is a very strong one within the rule, and it were perhaps needless to have extended this discussion of the subject so far; but the importance of the question, and the danger of sanctioning a rule too broad, even in its application to a strong case, may justify it. The case of *Johns v. Sewell*, 33 Ind., 1, is closely in point with the present case, where the purchase was actually made by the person furnishing and paying the purchase money, and directing the conveyance of the land to be made to another. See also *Hamilton v. Gilbert*, 2 Heisk., 680, and *Whetsel v. Roberts*, 31 Ohio St., 503.

There is only one other question about which there is any

special contention in the brief of appellant's counsel; and that is, whether the plaintiff waived his equitable lien on the homestead by his having sanctioned the proceeding to sell the balance of the land by the administrator to pay debts, by filing and having allowed this claim, and receiving twenty per cent. from the product of such sale to apply thereon. This conduct of the plaintiff would unquestionably operate as a waiver of any further right in the eighty acres sold by the administrator. But as to the homestead, it is not perceived how the appellants are affected in any way by such a waiver, as we regard and shall treat the respondent's present interest in the homestead. He held an equitable lien on the whole 120 acres, and its enforcement, without full payment of his claim upon a part of it, would not, by any rule, legal or equitable, waive his right to enforce the payment of the balance out of the residue. And it is not perceived how the appellants have been at all injured by the delay. In our judgment the rule laid down in the statute as to the order of sale on the foreclosure of a mortgage upon land, a part of which is a homestead, should operate in this case. An equitable lien for purchase money has the essential character and incidents of a mortgage to secure it, and, in its enforcement by sale of the land, the same order should be followed, and the same consequences should follow.

The statute (section 3163, R. S.) provides that, if it can be done without injury, "the homestead shall not be sold until all the other mortgaged lands have been sold." The respondent has seen fit in his own selected method to proceed against the land not a homestead to enforce his claim, and he must be held to the consequences of this rule of the statute. He ought not to stand in any better position than if he had filed his bill to enforce his equitable lien upon that portion of the land not a homestead, and it had been sold and only a part of his claim satisfied; or than if he had proceeded to enforce his lien on the whole, and that part not a homestead could have

been sold first and separately without injury. By his consent, that part of the land not a homestead has been placed beyond his reach in the enforcement of his equitable lien. He has chosen to proceed with other creditors to obtain his rights, and that portion of the land is now beyond his reach in this action  In respect to his lien, he could not ask to be placed in any better position than he occupied in the first place, and he should not be allowed, in respect to the homestead part of the land, to stand in any better position. It was his fault alone, and not the fault of the owner of the homestead, that all that portion of the land not a homestead has been put beyond the reach of this suit, and he alone should suffer the consequences. By his fault, if fault it can be called, if his present claim is allowed, he would stand by reason of it in a better position than he would otherwise have stood; for he now virtually asks that the homestead be sold first to satisfy much the larger portion of his claim. Had he proceeded in the first place to enforce his lien on all of the land, that not a homestead would have been first sold, and, to the extent realized by such sale, his claim *pro tanto* would have been satisfied; and it might well be in such a case that the owner of the homestead would have seen to it that such portion of the land should sell for its full value, in order to protect his homestead.

In any view we think it just that the natural and probable consequences of the enforcement of the statutory rule and order of sale should now fall upon the respondent. There is nothing appearing in the record to impeach the fairness of the administrator's sale of the eighty acres; and it is presumed that such sale was properly confirmed by the court, and it should, for the purposes of this case, be presumed that the amount for which the land was sold was its fair market value. According to our view, therefore, the judgment of the circuit court was not the proper judgment in such a case. We think the entire amount of the net product of such sale should be deducted from the claim of the respondent, instead of the per

Cannon vs. The Home Ins. Co. of New York.

cent. which was his distributive share thereof, as allowed by the judgment.

*By the Court.*—The judgment is. reversed, and the cause remanded with directions that the net product of the administrator's sale of the eighty acres be ascertained and deducted from the whole amount of the plaintiff's claim, without interest, and without regard to the per cent. he has already received, and that judgment for the remainder, and for the sale of the homestead, be entered accordingly.