### ZEHR et ux. v. MAY.

No. 8760—Opinion Filed Dec. 4, 1917.

(169 Pac. 1077.)

(Syllabus.)

**1. Homestead—Homestead Right— Unpaid Purchase Money.**

No homestead right can be acquired or asserted in land upon which the purchase

money is unpaid, either in whole or in part, as against the party to whom such purchase money is due.

## 2. Subrogation—Vendor's Lien.

Money paid for land by a third person directly to the grantor for the grantee, at the grantee's request, is generally considered purchase money as against the homestead right of the grantee, and entitles the person so advancing the purchase money to be subrogated to all the rights of the grantor as regards the vendor's lien.

## 3. Sale of Homestead—Constitutional Provisions.

Under section 2, art. 12, of the Constitution, the homestead of the family is not exempt from forced sale for the payment of the purchase money, or a part of the purchase money, for such homestead.

Error from District Court, Alfalfa County; J. C. Robberts, Judge.

Action by George W. May against Joseph Zehr and wife. Judgment for plaintiff, and defendants bring error. Affirmed.

A. R. Carpenter, for plaintiffs in error.

Titus & Talbot, for defendant in error.

RAINEY, J. The facts necessary to a determination of this case are substantially as follows: In September, 1915, the plaintiffs in error, Joseph Zehr and Anna Zehr, husband and wife, were occupying a quarter section of school land as their homestead. Joseph Zehr was the lessee of said tract of land, and as such owned the improvements thereon, and had the preference right to purchase the same, but had no other title to it. This land was ordered sold as provided by law, on September 10, 1915, at which time Joseph Zehr was indebted to the state of Oklahoma in the sum of $679.90, for rent of the land, and for the payment of which the state had a lien against the land and the improvements placed thereon by Zehr. Zehr did not have the money to pay the rent, nor to make the initial payment of 5 per cent. on the purchase price in the event he purchased the land, and on the day of the sale, approached defendant in error, George W. May, plaintiff below, and asked May if he intended to bid on the land. It was not clear, and in fact there is a conflict in the evidence, as to whether or not May informed Zehr he intended bidding on the land. May testified that he informed Zehr that he did not intend to bid on the land, if Zehr did. Zehr testified that he went to May, and asked him if he were going to bid on the land, and that May replied he

(May) did not know. During this conversation, which was just a short time before the sale, Zehr informed May that if he (Zehr) bought the land he would convey it and his improvements to him (May), provided they could agree upon the price. After some negotiations May agreed to purchase the land from Zehr for $500 above the appraised value of the land and the improvements. It does not appear from the evidence that any effort was made to keep others from bidding on the land, except that Zehr went to a Mr. Hinkle and asked him if he were going to bid on the land, and that Hinkle replied that he was not, if Zehr wanted it himself. After the land was bid in by Zehr, May paid the state of Oklahoma the initial payment of $270 and the $679.90 delinquent rent due the state by Zehr. A written contract was then entered into between Zehr and May. The contract is as follows.

"Cherokee, Oklahoma, September 10, 1915.

"This agreement, made and entered into this tenth day of September, 1915, by and between Joseph Zehr and Anna Zehr, parties of the first part, and George W. May, party of the second part, witnesseth: That in consideration of the payment of the sum of six hundred seventy-nine and 90-100 ($679.90) dollars, in cash this day paid by said second party to said first parties, and the further sum of nineteen hundred twenty and 10-100 ($1,920.10) dollars, to be paid as hereinafter specified, said parties of the first part bargain and sell to said party of the second part all their right, title, and interest in and to the southwest quarter of section thirty-six (36), township twenty-eight (28) north, of range twelve (12) W. I. M., Alfalfa county, state of Oklahoma. That said transfer to said second party is to be made by said first parties as soon as can be, and under the methods and plans as provided by the commissioners of the land office of the state of Oklahoma. It is understood by said parties that said land was purchased by said parties this day at public sale of school lands by the state of Oklahoma, at the sum of $5,400, which said sum is to be evidenced by a cash payment this day made in the sum of $270, and the balance by the plan as provided by said commissioners aforesaid; that said second party assumes and agrees to pay said sum of $5,400, and has this day advanced and paid said sum of $270, the said advance payment, to said commissioners aforesaid. It is further understood that the appraised value of the improvements on said land, and which were the property of said first parties, is the sum of $2,100; that said second party agrees to pay said sum to said first parties, and an additional sum of $500, making a to-

tal payment to said first parties by said second party of the sum $2,600. That there is due as rent on said land to said commissioners aforesaid the sum of $679.90, and which sum is required to be paid in order to effect the sale from the commissioners aforesaid to said first parties, and which sum said second party has this day advanced as aforesaid. It is further understood and agreed, and said second party hereby promises and agrees, to pay to said parties of the first part said sum of $1,920.10, the balance due them as aforesaid, at the time that they complete the transfer of such title to said land as is provided by the rule and regulations of the commissioners aforesaid, governing such lands. Possession of said land and property to be given by said first parties to said second party within 60 days from date hereof. Said second party to have immediate possession for the purpose of putting in wheat. This contract is binding upon the heirs, administrators, executors and assigns of the parties hereto.

"In witness whereof said parties have hereunto set their hands this 10th day of September, 1915.          Joseph Zehr,

"_____,

"Parties of the First Part.
"George W. May,
"Party of the Second Part."

Zehr agreed to have his wife, Anna Zehr, sign the above contract, but this she refused to do. Upon her failure to sign the contract, and when they both refused to comply with the terms thereof, or to return the money advanced, May instituted the present action, alleging the above facts, and asked for a specific performance of the contract, or in the alternative that he be decreed to have a lien on the land for the purchase price, so paid by him. The defendants filed a denial, and the defendant Anna Zehr filed an additional answer, in which she asserted a homestead interest in the property and the invalidity of the contract, for the reason that the same was not signed by her. The case was tried to the court, without jury, and on the issues presented the court made the following findings of fact:

"And the court finds that the land involved in this action, to wit, the southwest quarter of section thirty-six (36), township twenty-eight (28) north, of range twelve (12) W. I. M., Alfalfa county, Oklahoma, was the homestead of the defendants, and that by reason thereof the contract set out in plaintiff's petition was and is void as not signed by the wife of Joseph Zehr. And the court further finds that the money so advanced by plaintiff on the 10th day of September, 1915, being the amount sued for in this action, was used by the defendant Joseph Zehr in payment of the amount due the state of Oklahoma, as alleged and set out in plaintiff's petition, and that by reason thereof plaintiff is entitled to be subrogated to the lien held by the state for the sums so paid."

Judgment was then rendered for the plaintiff for the sum of $999.73, and said sum was adjudged to be a lien against the land, subject to the lien of the state for the unpaid purchase price. And it was further ordered that, in the event the defendants did not pay the judgment within eight months, an execution issue against said land, and that the same be sold, subject to the lien of the state, as upon execution, and that the proceeds be applied in the payment of the costs of suit and sale, and to the payment of the judgment of the plaintiff, with interest, and that the residue be brought into court to be disposed of as the court should order. From this judgment Joseph Zehr and his wife appealed to this court.

While the question has been raised in some cases as to whether or not mere possession without title is sufficient to support the homestead right, the courts generally adhere to the view that such possession is sufficient to give the party in possession the homestead right against all the world but the true owner, and the Zehrs would therefore have a homestead right in the land, which they were holding and occupying as lessees, but under the terms of the act providing for the leasing of the public lands, this right expired at the expiration of the lease, or when the land was sold by the state. Section 7171, Rev. Laws of Oklahoma 1910. Therefore, when this land was sold by the state, on September 10, 1915, all the homestead rights of the lessees, Joseph Zehr and Anna Zehr, his wife, expired; but, since he was the purchaser at said sale, he became the equitable owner of the land, and a new homestead right in favor of him and his wife immediately attached thereto, subject to the lien of the state, given by section 7152, Rev. Laws of Oklahoma 1910, which reads as follows:

"The state shall have first lien upon all lands sold under this article together with all improvements and appurtenances thereunto belonging, until all payments, both principal and interest, are made thereon. * * *"

The question then arises: Was May entitled to a lien for the money advanced by him and used by Zehr in the purchase of the land from the state? It is well settled that no homestead right can be acquired or asserted in land upon which the purchase money is unpaid, either in whole or in part,

as against the party to whom such purchase money is due. Brown v. Ennis, 69 Ark. 123, 61 S. W. 379, 86 Am. St. Rep. 171; Wilhelm v. Locklar, 46 Fla. 575, 35 South. 6, 110 Am. St. Rep. 111; Strohecker v. Irvine, 76 Ga. 639, 2 Am. St. Rep. 62. In such cases, although the land may be impressed with the homestead character, it remains subordinate to the lien for the unpaid purchase price, and in the event of a default in the payment of said purchase price, the same may be sold and the proceeds thereof applied in satisfaction of the judgment for the purchase money. Austin v. Underwood, 37 Ill. 438, 87 Am. Dec. 254; Magee v. Magee, 51 Ill. 500, 99 Am. Dec. 571; Steger v. Traveling Men's Building, etc., Ass'n, 208 Ill. 236, 70 N. E. 236, 100 Am. St. Rep. 225.

Does this rule apply where the money is advanced or loaned by a third person? The general rule is stated in 13 Ruling Case Law, paragraph 67, as follows:

. "Money paid for land by a third person directly to the grantor for the grantee is generally considered purchase money as against the homestead right of the grantee and entitles the person so advancing the purchase money to be subrogated to all the rights of the grantor as regards the vendor's lien"

While there are a few decisions to the effect that the person who furnishes the money to the purchaser to enable him to pay the seller for the homestead is not entitled to a lien for the money advanced, the rule is inequitable, and is, in our opinion, clearly against the weight of authority. In 86 Am. St. Rep., page 180, in the notes to the case of Brown v. Ennis, 69 Ark. 123, 61 S. W. 379, there is a collection of numerous authorities on the question under consideration, from which the general rule is deduced as above stated. See, also, Austin v. Underwood, 37 Ill. 438, 87 Am. Dec. 254; Magee v. Magee, 51 Ill. 500, 99 Am. Dec. 571. But, even where the general rule obtains, the mere fact that money was borrowed and used to satisfy an indebtedness secured by the homestead does not entitle the party furnishing the money to be subrogated to such claim, and where one loans money to a purchaser of land without any distinct understanding or agreement that the money is to be used in the purchase of the homestead or the erection of improvements thereon, the transaction does not create a lien against such homestead. The distinction recognized by most of the courts is stated in the case of Carey v. Boyle, 53 Wis. 574, 11 N. W. 47, wherein the court said:

"It must be understood that the extension of this equity to a third person is strictly confined to those who furnish or advance the purchase money to the purchaser in such manner that they can be said either to have paid it to the vendor personally, or caused it to be paid on behalf or for the benefit of the purchaser, and to this extent they become parties to the transaction. It must not be a general loan, to be used by the purchaser to pay the consideration of the purchase, or to be used for any other purpose at his pleasure. In such case, the simple fact that the money can be traced into the land as having been paid by the purchaser to the vendor, as the whole or part of the purchase money, gives the person who loaned it no such right."

Neither will the mere fact that borrowed money is subsequently invested in the homestead give the lender any lien on the premises. The case of Magee v. Magee, 51 Ill. 500, 99 Am. Dec. 571, is similar to the case at bar, in that, at the time the money was advanced by the third person to the vendee, the vendee had not secured a deed from the vendor, and the money was borrowed for the purpose of taking up the payments due the vendor by the vendee. The vendee promised to execute a mortgage, which he never did, and the court held that the money advanced by the third party was purchase money, and that no homestead right could be asserted to prevent the sale of the property in payment of the debt.

Section 2, art. 12, of our Constitution, provides that:

"The homestead of the family shall be, and is hereby protected from forced sale for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon. * * *"

The case of Nichols v. Overacker et al., 16 Kan. 54, is similar in principle to the instant case. It was there held:

"Where a husband and wife are occupying a certain piece of land as their homestead, but without having any title thereto, and N. loans to the husband a certain sum of money with the understanding and agreement that said money should be used in purchasing said land, and that the husband shall then give his note and mortgage on the land to N. for such money, and such money is so used, and the land is purchased therewith, and then the husband executes the note and mortgage as agreed, but the wife does not join in the execution of either, nor does she give her consent thereto, and she has no interest in the land except as the wife of her husband and as an occupant

with him of the land, **held,** that the loaning of the money, the purchasing of the land, and the giving of the note and mortgage, are not separate and independent transactions, but are parts and portions of one single and entire transaction; that they were all done in and about the purchase of said land, and to accomplish that purpose; that the obligation to repay the money is an 'obligation contracted for the purchase of said premises,' within the meaning of section 9 of article 15 of the Constitution, and therefore that here is no homestead exemption law as against the enforcement of such obligation."

The court further observed that the rule is just the same as if no exemption law had ever been adopted.

Unquestionably the $270, being 5 per cent. of the appraised value of the land, exclusive of the improvements, was a part of the purchase price of the land, and we also think that the delinquent rent in the sum of $679.90 was purchase money within the spirit, if not within the strict meaning, of the term. The law required the payment of this delinquent rent before Zehr was permitted to buy the land, and it was absolutely necessary for this money to be paid before he and his wife could acquire any homestead right whatever in the land when the same was sold by the state. If the land had been purchased by some other person, the amount of the delinquent rent, under the law, would have been deducted by the state from the appraised value of the improvements in making settlement with Zehr. It seems to us that the money required under the law to be paid in order to consummate the purchase of the land, under the circumstances of this case, falls clearly within the spirit of the law. It would be highly inequitable to permit Zehr and his wife to enjoy the land in controversy as a homestead as against the just claim of May, whose money procured the land for them. The money was furnished by May with the distinct understanding that the same was to be used in part payment of the purchase price, and the money was so used, and the homestead right in the premises so purchased is subordinate to the lien for the purchase money, and the trial court did not err in impressing a lien thereon, and ordering the land sold in satisfaction thereof.

The judgment of the trial court is affirmed.

All the Justices concur.