DE FONTENAY, Respondent, *v.* CHILDS, Appellant.

(No. 6,995.)

(Submitted January 21, 1933. Decided February 25, 1933.)

[19 Pac. (2d) 650.]

*Messrs. Hall & McCabe,* for Appellant, submitted a brief; *Mr. H. C. Hall* argued the cause orally.

*Mr. J. R. Wine,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is a suit to quiet title to a tract of land in Lewis and Clark county. The cause was tried to the court sitting without a jury, resulting in judgment for the plaintiff. Defendant Childs has appealed from the judgment.

The facts of the case are these: On April 27, 1929, plaintiff purchased the land from Alford E. Burtch. At the time of the purchase plaintiff was a married man living with his wife and three minor children. After the purchase plaintiff built houses and cabins upon the land for the purpose of operating it as a dude ranch. In September, 1929, Childs brought an action in the district court of Cascade county against De Fontenay to recover upon a loan made by him to De Fontenay, evidenced by promissory notes, and on September 19 levied a writ of attachment on the property involved. On

March 3, 1930, judgment in the sum of $20,000 and costs was entered in that action in favor of Childs and against De Fontenay. On October 25, 1929, De Fontenay filed in the office of the county clerk of Lewis and Clark county a declaration of homestead on the property. On March 5, 1930, Childs filed a transcript of his judgment in the office of the clerk of the district court of Lewis and Clark county and caused execution to be levied upon the property. When the declaration of homestead was filed, plaintiff was living on the property with his second wife and three minor children of his first wife. His first wife had obtained a decree of divorce on March 21, 1929. On July 17, 1931, his second wife died. Testifying regarding his occupation he said: "I worked around a little bit; rented out a few horses; served a few meals over there and camped a few people around there and grazed a little stock, horses."

The evidence shows that, when the declaration of homestead was filed, he had thirteen head of horses grazing on the property, but at the time of the trial he had but three head. The evidence also shows that adjoining the land here involved was a 160-acre government homestead which plaintiff had filed upon, and on which his horses also grazed, but as to this he said: "I have no claim there now; the time was up."

The defendant Monarch Lumber Company, after the declaration of homestead was filed, foreclosed a mechanic's lien on part of the property covered by the declaration, and defendant Winifred Arnald became the holder of the certificate of title to that part of the property, and as to it there is no controversy here.

The only issue presented by the appeal is whether plaintiff's declaration of homestead takes precedence over the judgment of defendant Childs. At the outset it should be said that the filing of the declaration of homestead after the writ of attachment had been levied does not preclude plaintiff from claiming the homestead as exempt, if otherwise entitled to do so. (*Wall* v. *Duggan*, 76 Mont. 239, 245 Pac. 953.)

On behalf of defendant Childs, it is contended that plaintiff is not entitled to claim the property as a homestead because the land is not "used for agricultural purposes."

Section 6945, Revised Codes 1921, provides that "the homestead consists of the dwelling-house in which the claimant resides, and the land on which the same is situated, selected as in this chapter provided."

Section 6968 in part provides that "homesteads may be selected and claimed: 1. Consisting of any quantity of land not exceeding one hundred and sixty acres used for agricultural purposes, and the dwelling-house thereon and its appurtenances, and not included in any town plot, city, or village. * * *. Such homestead, in either case, shall not exceed in value the sum of two thousand five hundred dollars." By Chapter 126, Laws of 1931, section 6968 was amended to embrace 320 acres used for agricultural purposes.

These statutes were enacted pursuant to the command of section 4, Article XIX, of the state Constitution, which provides that "the legislative assembly shall enact liberal homestead and exemption laws." They should be liberally construed for the benefit of the homestead claimant. (*Oregon Mortgage Co.* v. *Dunbar*, 87 Mont. 603, 289 Pac. 559, 73 A. L. R. 113, and cases there cited; *Lindley* v. *Davis*, 7 Mont. 206, 14 Pac. 717.)

The term "agriculture" includes in its definition the raising and care of livestock. (2 C. J. 988; *Davis* v. *Industrial Commission of Utah*, 59 Utah, 607, 206 Pac. 267.) The supreme court of Wisconsin in *Binzel* v. *Grogan*, 67 Wis. 147, 29 N. W. 895, 897, had before it a statute practically identical with ours. Like ours, the Wisconsin statute there considered required that the land selected should be "used for agricultural purposes." In that case the only suggestion that the land was used for agricultural purposes was that the owner kept and fed his horse on the land. The court, in holding that this was sufficient to show that the land was used for at least one "agricultural" purpose, said: "This brings us to the question, do the words 'used for agricultural purposes,' as employed in

the statute, exclude the appellant from the benefit of the homestead exemption therein given? To ascertain the literal meaning of the words 'agricultural purposes' resort must be had to the lexicons for definitions of 'agriculture.' Webster tells us (accurately enough, no doubt) that it is 'the art or science of cultivating the ground, especially in fields or in large quantities, including the preparation of the soil, the planting of seeds, the raising and harvesting of crops, and the rearing, feeding, and management of live-stock; tillage; husbandry; farming.' The defendant did none of these things on his Sullivan land, unless, perhaps, he kept and fed his horse there; and, if the literal construction of the statute prevails, he had no homestead rights in the property, unless the same were saved by the keeping and feeding of the horse on the premises. If that was one of the purposes for which he used the premises, it must be conceded, we think, that they were used for one 'agricultural purpose,' at least.''

Following the rule of liberal construction, we hold that plaintiff was using his land for an agricultural purpose.

We deem it of no importance that plaintiff's horses were not used or kept for use in tilling the soil or other agricultural pursuit. The test is, Is the land ''used for agricultural purposes?'' As above stated, we hold that it is, under the facts here.

The next point urged by defendant to defeat the homestead of plaintiff is that the latter has a United States government homestead and that he is precluded from claiming more than one homestead. Under the facts presented here, it appears that plaintiff can no longer claim any rights in the government homestead, and hence is not in the position of one claiming more than one homestead.

The next assertion is that plaintiff is not the head of a family so as to entitle him to the homestead. The head of a family, as defined in section 6969 as amended by Chapter 86, Laws of 1925, includes (1) ''the husband, when the claimant is a married person, * * * '' and (3) ''every person who has residing on the premises with him or her, and under

his or her care and maintenance, either: First. His or her minor child, or the minor child of his or her wife or husband, or former wife or husband.''

Here at the time of the filing of the declaration plaintiff was a married man living on the property in question with his second wife and three minor children of his first wife. They continued to reside on the premises up to the time of the trial in September, 1931, except the second wife, who died on July 17, 1931. This was ample to show that plaintiff was the head of a family. Nor is it of any importance that the first wife was awarded the custody of the minor children in the divorce action. (*Commercial National Bank of San Antonio* v. *Posey,* (Tex. Civ. App.) 34 S. W. (2d) 678.)

Finally, it is claimed that the claim of defendant Childs ▇ should take precedence over the homestead of plaintiff, because, under the doctrine of subrogation, Childs has a vendor's lien upon the premises.

Section 6949 provides in part that ''the homestead is subject to execution or forced sale in satisfaction of judgments obtained: * * * 2. On debts secured by mechanics' or vendors' liens upon the premises.'' Here the record shows that the $20,000 loan by Childs to the plaintiff was made on certain promissory notes. There is no evidence that the loan was made specifically for the purpose of buying and improving the property in question. The record does show that the money, together with $2,000 of plaintiff's money, was in fact used for that purpose. In the case of *Mitchell* v. *McCormick,* 22 Mont. 249, 56 Pac. 216, 218, it was held that a money judgment cannot be impressed as a lien on a homestead without a showing that the money was borrowed for the purpose of buying the homestead, and that it was not sufficient that the money was used to buy the homestead. The court in discussing this question said: ''Turning now to notice the last paragraph of the answer, we observe that it does not allege that the money for which the judgment was rendered was loaned to plaintiff for the purpose of purchasing the homestead. Conceding that, if one person borrows money from another with

which to purchase property, this latter has a vendor's lien upon the property for the money so loaned, the allegations in this paragraph are not sufficient. They do not show that the money was borrowed by the plaintiff for the purpose of purchasing the homestead property. She may have borrowed it, so far as the facts alleged show, for some other purpose, exclusively upon her personal credit. Defendant, in support of his contention that his judgment is a lien upon the property by reason of the fact that the money for which it was obtained was used in the purchase and improvement of the property, cites a long list of authorities,—among them, *Blaisdell* v. *McDowell*, 91 Cal. 285, 287, 27 Pac. 656 [25 Am. St. Rep. 178]; 1 Freem. Ex'ns, sec. 249f; *Carr* v. *Caldwell*, 10 Cal. 384 [70 Am. Dec. 740]; *Pratt* v. *Topeka Bank*, 12 Kan. 570; *Magee* v. *Magee*, 51 Ill. 500 [99 Am. Dec. 571]; *Coleman's Adm'r* v. *Parrott*, 17 Ky. Law Rep. 814, 32 S. W. 679; but these, without exception, are cases where the money was furnished by the claimant for the purpose of purchasing the property upon which the lien was sought to be fixed.'' On the authority of that case defendant's claim to a vendor's lien upon the property must be denied. This is the view of other courts as well. (*Carey* v. *Boyle*, 53 Wis. 574, 11 N. W. 47; *Zehr* v. *May*, 67 Okl. 97, 169 Pac. 1077, L. R. A. 1918C, 431; *Dreese* v. *Myers*, 52 Kan. 126, 34 Pac. 349, 39 Am. St. Rep. 336; *Johnson County Sav. Bank* v. *Carroll*, 109 Iowa, 564, 80 N. W. 683; and see 29 C. J. 866, notes 50 and 51, and 13 R. C. L., pp. 605, 606, note 13.)

The court properly entered judgment for plaintiff, and it is affirmed.

Mr. Chief Justice Callaway and Associate Justices Matthews, Stewart and Anderson concur.