No. 14,643.

ZEIGLER *v.* THE PEOPLE.
(124 P. [2d] 593)

Decided March 30, 1942.

Mr. T. E. MUNSON, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. REID WILLIAMS, Assistant, Mr. GAIL L. IRELAND, Attorney

General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. ROBERT L. GEE, Assistant, for the people.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THIS case involves the validity of what is known as the "Produce Dealers' Act," being chapter 90 of the Session Laws of 1937. This law is the result of a gradual development starting in 1915 when the state legislature, in chapter 54 of the Session Laws of 1915, enacted a law regulating the business of "Commission Merchants" and provided for their licensing and bonding and for penalties for violation of the act. Chapter 72 of the Session Laws of 1929 set up a new officer, the Colorado director of markets, to whom application should be made for issuance of licenses in place of the secretary of state, who was the officer placed in control under the 1915 act, and the title of the act was also considerably broadened to resemble more nearly the title of the present 1937 act. By chapter 66 of the Session Laws of 1931 the term "Commission Merchant" was defined so as to include the word "Broker." Chapter 92 of the Session Laws of 1935 goes a step further and uses the word "Broker" in a separate category from commission merchant. The 1937 act, like the previous ones, has definitions of "Commission Merchant" and "Farm Produce." It also defines new terms, including that of "Dealer" which reads as follows: "The term 'Dealer' means any person engaged in the business of buying any farm produce from the owner for resale; provided that the term 'Dealer' as herein defined shall not include bona fide retail grocery merchants or processors of farm products or manufacturers of products therefrom having a fixed or established place of business in this state." S.L. '37, c. 90, §1 (h). The definition of "farm produce" under the 1937

act reads as follows: "The term 'Farm Produce' or 'Farm Products' shall include all agricultural, horticultural, vitacultural, fruit and vegetable products of the soil, livestock and livestock products, and honey, but shall not include poultry and poultry products, or timber products, milk and milk products." S.L. '37, c. 90, §1 (c). The definition of "farm produce" has varied under the different acts. Thus the 1915, 1929 and 1931 acts included, inter alia, meats, poultry, eggs, dairy products, and honey. The 1935 act specifically excludes livestock, meats, poultry, eggs and dairy products, and this exclusion of poultry and poultry products and milk and milk products still continues in the 1937 act; but honey is again included in the definition of "farm produce" under the 1937 act and for the first time the 1937 act includes in the definition of "farm produce" livestock and livestock products. The act of 1937, therefore, which repeals and supersedes all previous acts, expressly enlarged both the type of persons to be brought under the act, namely: dealers as well as commission merchants, brokers and agents, and also added livestock and livestock products in its classification of farm produce coming under the subject matter of the act. It also, as will be seen later, added and defined the term "cash buyer."

It is because of the enlarged scope of the 1937 law that plaintiff in error in this case, who was the defendant below and to whom we will refer as defendant, found himself brought within the purview of the act. A criminal information was filed against him by the district attorney in the district court of Logan county for its violation. The first count alleged that the defendant engaged in the business of a dealer in farm produce without having procured a license as required by that law; the second count related to a particular purchase of livestock made by defendant in violation of the law. The district court, after argument, found the defendant guilty as charged in each count and fined him the total

sum of twenty-five dollars and costs. The case now comes here on writ of error.

The facts are set out in a stipulation between the parties hereto. This recites that the defendant was engaged in buying livestock from farmers, owners and producers thereof for resale; that he was so engaged from July 1, 1938 until April 17, 1939, during which period he purchased such livestock for resale on various dates, at various places in Logan county. He never paid for this livestock with money, but always by checks drawn on a bank in Sterling, Colorado.

The particular transaction in the second count is then admitted, in which defendant paid $4,000 by check on the bank with which he did business to the Propst Livestock Company on September 9, 1938, for 108 head of weaning calves, 28 head of cows and one small calf and took possession of these animals. This check and all other checks which he gave in payment of purchases of livestock were duly honored by the bank on which drawn.

Defendant obtained a license as dealer under the Produce Dealers' Act for the period from July 1, 1937 to July 1, 1938, but did not obtain one for the ensuing year from July 1, 1938 to July 1, 1939, claiming to be exempt from the act by reason of the fact that all produce bought by him was paid for at the time of delivery and that he made payment by checks on his bank where he keeps ample funds on deposit to meet checks drawn by him.

It further appears that defendant owns two farms, pasture land and three feed yards; that he buys cattle and feeds them for himself and later sells them, so that as to some stock he buys and sells, while in other cases he buys and feeds and sells.

Defendant's first position is that he does not come within the terms of the act because of the fact that he is not subject to its provisions by reason of section 2 thereof which exempts the following classes of persons:

"(a) Any person buying farm produce for the purpose of reselling the same in artificially dried, processed, canned or other preserved form or processor of farm products or manufacturers of products therefrom.

"(b) Any person or exchange dealing in livestock and operating at a public livestock market and subject to and operating under a bond required by the United States to secure the performance of their obligations.

"(c) Any cash buyer."

■ Counsel argues that defendant is exempt under subsection (a) as being a processor, in that the buying of cattle off of grass and putting them on feed and fattening them for the market comes under the definition of processing. We believe that the case of *Kennedy v. State Board*, 224 Ia. 405, 276 N.W. 205, sufficiently answers that contention when it says: "As the court understands the matter, processing is some change made in the natural product as the curing of meats, canning of vegetables and it has been held that the glazing of an egg-shell to better preserve the egg is a processing. *The growing of the article is not in the common use of the term a processing, but some change in the article after it is grown by means of special treatment is a processing.*" (italics ours) Defendant does not claim to be exempt under section 2 (b) supra. His most seriously argued contention is that he is exempt under section 2 (c) as a "cash buyer."

■ The definition of "cash buyer" as set out in section 1 (k) of the act is as follows: "The term 'cash buyer' means any person other than a commission merchant or dealer who obtains from the producer thereof possession or control of any farm products by paying to the producer at the time of obtaining such possession or control the full agreed price of such commodity in lawful money of the United States or by exchange of farm products." This definition clearly does not include a person who pays by check. Defendant argues that a payment by check is in effect cash, and that the legis-

lature did not intend to exclude payments by check. We cannot agree with this position. The definition itself does not include payment by check and the history of the development of the act indicates a definite intent to exclude payment by check. The 1935 act, in defining those persons who come under the term "commission merchant" for the purposes of that act, makes an exception of those who make a "payment to said owner at the time of obtaining possession or control the full purchase price of such commodity in lawful money of the United States, or its equivalent, * * *." The omission of the words "or its equivalent" after "lawful money of the United States" in the 1937 act would indicate a definite legislative intent to narrow the term "cash buyer" to one who actually pays for farm produce solely in lawful money of the United States or by exchange of farm products. The philosophy for thus excluding those who pay by check from the category of "cash buyers" is set out in more detail in the case of *State v. Mason*, 94 Utah 501, 78 P. (2d) 920, where the Utah Supreme Court passes upon an act very similar to the one here under consideration. In that case the court makes clear that the legislative intent is to limit dealers to two classes, those who pay by actual lawful money of the United States and those who have been duly licensed by the state in accordance with the terms of the act; that the very purpose of that provision is to protect the producers in the sales of their produce from unscrupulous and untrustworthy dealers whose checks prove to be worthless after the produce for which they are given has passed beyond the control of the producer.

Defendant's counsel also cites the following: *Morrison v. Bailey*, 5 O. St. 13, 64 Am. Dec. 632 (Dec. 1855); *In re Brown*, 4 Fed. Cas. 342 (1843). In both these cases the court was distinguishing between a check and a bill of exchange, and the point under discussion here was not involved in either of those cases, and in neither is the check called money. In the third case cited by defend-

ant's counsel, *Glines v. State Savings Bank,* 132 Mich. 638, 94 N.W. 195 (1903), the court recognizes that a check may be "deposited as cash, pass current as cash" but shows it is not cash itself when it adds "oftentimes the holder of a check obtains cash for it from a bank instead of depositing it." See *Dunlap v. Whitmer,* 133 La. 317, 62 So. 938, where the court states that a bill of exchange is not lawful money, and *McDaniel v. Patterson,* 159 S.C. 378, 157 S.E. 72, holding that a check is not lawful money.

We conclude therefore that neither (1) from the definition of "cash buyer" in the act itself, nor (2) from a study of the intent of the legislature from previous enactments, nor (3) from the authority of the cases cited is defendant exempt from the act on the ground that he is a "cash buyer."

█ █ Defendant further contends that, even if he is not exempt under the terms of the act, the act itself is unconstitutional. His first ground is that it violates section 21, article V of the Colorado Constitution, which reads: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be so expressed." Defendant says the Produce Dealers' Act is invalid in that the crime here charged is not disclosed by the title. The title of this act is as follows: "An Act Relating to Agriculture and Agricultural Products; Providing for Investigations of the Business and Affairs of Wholesale Purchasers Thereof, Whether Under Contract or Otherwise; and for Licensing and Regulation of Purchasers of such Products; to Prevent Unfair Trade Practices in Connection with such Products; Providing Penalties for the Violation of this Act and Providing that this Act may be Indexed and Cited as 'The Produce Dealers' Act.'" It is evident that a title cannot include all of the

details of a bill. The general assembly may, within reason, make the title of an act as comprehensive as it chooses and thus cover legislation relating to many minor but associated matters. See *Gordon v. Wheatridge Dist.*, 107 Colo. 128, 109 P. (2d) 899. The title of the Produce Dealers' Act is general, indicating the subject matter dealt with, i.e., agriculture and agricultural products; further indicating the licensing and regulating of purchasers of such products, an intent to prevent unfair trade practices in connection therewith, and providing penalties for the violation of the act. It seems to us that this title is sufficiently broad and general to cover the provisions in the act of which defendant complains, and that those to which defendant objects are relevant and germane to the general subject matter contained in the title. We therefore believe that the title satisfies the rule laid down in *Burcher v. People,* 41 Colo. 495, 93 Pac. 14. We do not believe that *Armstrong v. Crissey,* 83 Colo. 105, 262 Pac. 926, cited by defendant's counsel, is in point for the reason that in the instant case the title of the act definitely indicates a purpose to regulate purchasers of agricultural products. It also relates to agriculture and agricultural products, and the term "agriculture" includes the rearing, feeding and management of livestock. *Davis v. Industrial Commission,* 59 Utah 607, 206 Pac. 267, 2 C.J., p. 988, §1. Webster defines "agriculture" as: "The art or science of cultivating the ground * * * including also feeding, breeding and management of livestock." See, also, *DeFontenay v. Childs,* 93 Mont. 480, 19 P. (2d) 650, *Melendez v. Johns,* 51 Ariz. 331, 76 P. (2d) 1163, and *Hight v. Industrial Commission,* 44 Ariz. 129, 34 P. (2d) 404, all holding that the term "agriculture" includes the raising of livestock.

Defendant cannot rightfully contend that he has been thrown off his guard by the title of the act when the record discloses that he applied for and obtained a license under its provisions the first year it was in

effect. He, in common with other dealers, could ascertain from the title that the act requires the licensing of dealers in farm produce, and, reading through the body of the act, could observe that the exemptions do not exclude him from its operation. Observing that a cash buyer is in the class of those exempted from the operation of the act, he also should notice the definition of "cash buyer," which definitely excludes one who pays by check.

Defendant further contends that the Produce Dealers' Act violates the due process clauses of the Colorado Constitution (article II, section 25) and of the United States Constitution (article XIV, section 1), and calls attention to subsection (b) of section 3, page 299, of the act. This provides that, after proper application has been filed and the designated fee received, "the director shall thereupon, when he is satisfied that the convenience and necessity of the industry and the public will be served thereby, issue to such applicant a license entitling the applicant to conduct the business described * * *." Defendant claims that by reason of this provision the legislature has given to the director of markets arbitrary power to determine whether or not a license for carrying on activities, such as those in which defendant in this case is engaged, shall be granted.

A survey of the entire act gives no intimation that it shall or can be administered and licenses issued in accordance with the personal or arbitrary whim of the director of markets, but rather it appears that it shall be administered for the welfare of the public. The act specifically provides that farm produce is declared a commodity affected with a public interest requiring regulation for the protection of both producer and consumer; forbids certain acts, prescribes certain rules of conduct; makes the director of markets the enforcing agent; sets forth in detail when the director may deny or refuse licenses, when he may revoke them; provides that his actions shall be subject to review by the courts,

and confers upon him authority to make rules and regulations and power of inspection. In short, it gives to the director of markets appropriate powers and duties similar to those given to heads of other executive departments and necessary for proper functioning of the law.

Defendant next argues that the act violates due process of law in that it abridges the right of freedom to contract between parties in matters personal to themselves, and deprives them of power to fix the mode by which compensation shall be ascertained. An answer to this argument is found in the case of *People v. Beakes Dairy Co.*, 222 N.Y. 416, 119 N.E. 115, where it was held that the business of producing or dealing in milk products is acknowledged to be within the police power of the state and license laws for persons so engaged have been persistently upheld.

In the case of *Nebbia v. New York,* 291 U.S. 502 (1933), 54 Sup. Ct. 505, 78 L. Ed. 940, the United States Supreme Court upheld a New York statute fixing the price of milk for dealers and storekeepers, and the majority opinion in that case, written by Mr. Justice Roberts, includes this statement: "The Constitution does not guarantee the unrestricted privilege to engage in a business or to conduct it as one pleases. Certain kinds of business may be prohibited; and the right to conduct a business, or to pursue a calling, may be conditioned. Regulation of a business to prevent waste of the state's resources may be justified. And statutes prescribing the terms upon which those conducting certain businesses may contract, or imposing terms if they do enter into agreements, are within the state's competency." The minority opinion in that case, written by Mr. Justice McReynolds, in which Justices Van Devanter, Sutherland and Butler concurred, includes the following: "Regulation to prevent recognized evils in business has long been upheld as permissible legislative action. But fixation of the price at which 'A,' engaged in an ordinary business, may sell, in order to enable 'B,' a pro-

ducer, to improve his condition, has not been regarded as within legislative power. This is not regulation, but management, control, dictation— * * *." In the instant case objection is not made to the fixing of prices of any of the agricultural products coming under the purview of the Produce Dealers' Act. It is regulation that is objected to, a regulation that, in our judgment, comes within the sphere of approval of the minority as well as the majority opinion in the Nebbia case.

A state may prescribe all such regulations as, in its judgment, will secure or tend to secure the people against the consequences of fraud, and may institute any reasonable preventive remedy required by the frequency of fraud, or the difficulty experienced by individuals in circumventing it, especially when other means have not proved to be efficacious. 11 Am. Jur., p. 1027, §273.

The police power relates not merely to the public health and to public physical safety, but also to public financial safety. Laws may be passed within the police power to protect the public from financial loss. *Holsman v. Thomas,* 112 O. St. 397, 147 N.E. 750, 39 A.L.R. 760.

■ Defendant finally raises the objection that the Produce Dealers' Act violates the provision guaranteeing equal protection of the laws to citizens of a state. This objection has been so fully answered by Mr. Justice Wolfe in the case of *State v. Mason, supra,* that we are content to refer to that case and the authorities cited therein and add only the following comment: In the case of *People v. Perretta,* 253 N.Y. 305 (171 N.E. 72, 84 A.L.R. 636), a statute requiring persons conducting milk gathering stations to give an approved bond to secure the prompt payment of all amounts ·due producers, or in lieu thereof to satisfy the licensing authority of their ability to pay probable creditors, was held to be not violative of the equal protection clause of the Fourteenth Amendment to the federal Constitution. See, also, *People v. Beakes Dairy Co., supra,* and *Hunter v. Colfax Cons. Coal Co.,* 175 Ia. 245, 154 N.W. 1037.

In *Consumers' League v. Colorado & S. Ry. Co.*, 53 Colo. 54 (125 Pac. 577, Ann. Cas. 1914A, 1158), we followed the general rule that, in cases involving the equal protection clause of the Constitution, the fundamental principle involved in classification is that it shall meet the requirement that it must affect alike all persons in the same class and under similar conditions. We believe that this rule has been followed in this case.

We have heretofore referred to the similarity between the Produce Dealers' Act of Utah, chapter 4, Laws of Utah 1935, and the Colorado Produce Dealers' Act of 1937, which also has been noted in the people's brief. We note that a similarity seems to exist also in the background and history of these two acts. In the opinion in *State v. Mason, supra,* Mr. Justice Wolfe calls attention first to a law (Section 3-9-1, R.S. 1933) requiring a license to buy, sell or handle carload lots on commission; then in 1933 came an act of the Legislature requiring the licensing of those buying and selling farm products on commission in any quantities; he then continues: "Those laws were repealed and the present act substituted (1935). Undoubtedly one of the reasons for substitution was to include another class called 'dealers' who took title outright for resale rather than possession for sale as a commission merchant. It apparently appeared to the Legislature that there was little difference as far as the farmer was concerned between the case where his products were assigned to a commission merchant and he never received his money, and a case where a 'dealer' took title, went off with the goods, and the farmer never received his money. The previous acts were designed to protect the farmer against commission merchants and consignees where the farmer retained title until sale. It was found just as necessary to protect him against those who bought outright, took both title and possession, and gave a 'rubber' check in payment." We are not concerned with the wisdom of this law. That is a matter within the legislative sphere.

To summarize we hold: (1) That defendant is not exempt under the terms of the Produce Dealers' Act; and (2) that the act itself is a valid exercise of the police power and is constitutional.

The judgment is therefore affirmed.