María Aldea y Díaz, Plaintiff and Appellant, *v.* Paulina Jesusa Tomás y Piñá et al., etc., Defendants and Appellees.

No. 7000. Argued March 9, 1937.—Decided June 18, 1937.

*Carlos D. Vázquez* for appellant. *Dubón & Ochoteco* for appellees.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is an action to enforce a homestead claim amounting to $500. The action was commenced in a municipal court which rendered judgment in favor of the plaintiff, and, on appeal to a district court, that judgment was reversed. Plaintiff is the widow of Fernando Pozada who owned jointly with her the property in which the homestead right is claimed, and the defendants are the heirs of Ana Piñán, the mortgage creditor who foreclosed the property without satisfying the homestead claim.

In the complaint it was alleged in substance that Fernando Pozada and his wife, the plaintiff, bought in 1917 a two-story concrete house and lot numbered 84 on San Agustín Street in Puerta de Tierra; that they occupied said property as a homestead, the plaintiff having lived in it with her husband, and, after the latter's death which occurred in 1925, with their children and grandchildren, and then she was compelled to vacate the premises on account of a summary foreclosure proceeding instituted by the defendants; that on April 4, 1925, the plaintiff and her husband borrowed from Ana Piñán, the predecessor in interest of the defendants, the sum of $3,000, to secure which they mortgaged the property without waiving their homestead right, Fernando Pozada being the head of a family and occupying with his family the said property at the time the lien was constituted; that Mrs. Piñán died in 1925 and the mortgage credit was alloted to her heirs, the defendants herein, who foreclosed said credit at maturity for failure to satisfy the same, the property being

sold at public auction and awarded to F. Rivera Collazo on August 30, 1928, for $4,100, without the defendants paying to the plaintiff the sum of $500 as the value of her homestead right.

The defendants in their answer denied that the plaintiff had any homestead right in the house described in the complaint and alleged that the house in question and "another one at the back of the same lot" had been built by her husband to replace the one which he purchased in 1907 from José Fernández, with $3,000 borrowed by him from Antonio Gayol, and which was destroyed by fire, said loan being secured by a mortgage for the payment of which he again borrowed a like sum from the predecessor in interest of the defendants. This latter loan was also secured by mortgage and gave rise to the foreclosure proceeding which terminated in the sale at public auction of the property involved.

The defendants reproduced in their answer their defenses of insufficiency of the complaint, prescription, and nonjoinder of parties defendant.

The case went to trial. Both parties introduced their evidence and the court, for the reasons set forth in its statement of the case and opinion, dismissed the complaint and imposed costs on the plaintiff. The trial court said:

"The mortgage which gave rise to the foreclosure proceeding was constituted by deed No. 15, dated April 4, 1925, and executed before Notary Luis E. Dubón. It does not appear from said deed that the mortgagors, that is, the plaintiff and her deceased husband, waived any homestead rights they might have in the mortgaged property. However, it appears from the said deed that in the same transaction and by means of the same instrument there was canceled a mortgage for the same amount as that of the mortgage given to the predecessor in interest of the defendants, that is $3000 as principal, which mortgage so canceled had been constituted in favor of Antonio Gayol y Martínez by a deed of March 15, 1922, executed before Notary E. H. F. Dottin and duly recorded in the registry of property. The evidence fails to show that upon the execution of the mortgage deed to Gayol any homestead right was waived, but it ap-

pears from the testimony of the defendant Marcos Tomás Caneja that at the time of the execution of the mortgage in favor of his wife Ana Piñán y Acevedo, defendants' predecessor in interest, Pozada, then the owner of the mortgaged property, told him that that mortgage was given in order to cancel the one held by Antonio Gayol y Martínez, and that the latter mortgage, that is, the one owned by Gayol, had been constituted for the purpose of raising funds for the construction of the mortgaged house.

"This testimony of Marcos Tomás Caneja was objected to by the plaintiff, relying on the doctrine laid down by our Supreme Court in *Wilcox* v. *Axtmayer et al.*, 23 P.R.R. 319. The objection was overruled because in the opinion of the court the doctrine of that case is not applicable to the case at bar, as the latter is not within the purview of the law that was construed in *Wilcox* v. *Axtmayer et al., supra.* No action instituted by the heirs or successors in interest of a decedent is involved in the instant case. This action was brought by the plaintiff in her own behalf, and as an admission adverse to her made by her predecessor in title is involved, the same is admissible under the doctrine established in *Falero* v. *Falero,* 15 P.R.R. 111.

"The testimony of Marcos Tomás Caneja is corroborated by the fact that the mortgage in favor of his wife was constituted in the same instrument containing the cancellation of the mortgage held by Antonio Gayol y Martínez; and it further appears from the said deed that the original house bought by Pozada and his wife, the plaintiff, was destroyed by fire, and that the ownership of the present house which was encumbered by the two mortgages was vested in the Pozada–Aldea spouses as having been built by them.

"It having been established that the proceeds of the loan, secured by mortgage to Antonio Gayol, were applied to the building of the mortgaged house, and it having been further shown that the mortgage to Gayol had been paid with money received from Ana Piñán, it remains for us to determine whether, under those circumstances, the plaintiff is entitled to claim the homestead right sought to be enforced against the defendants herein.

"There is no doubt that the plaintiff and her husband would not have been entitled, under the provisions of the Homestead Act, to recover any sum on that account from Gayol, the former mortgagee, as his lien was constituted to secure a certain sum of money that was applied to the reconstruction of the house. If, as appears from the evidence, the money lent to the plaintiff and her husband by the

ancestor of the defendants was applied to pay Gayol's mortgage, then it follows that the defendants' predecessor in interest was subrogated to the rights of Gayol in such manner that if the homestead claim could not be enforced against him it could not be enforced against the defendants either. Upon this question our Supreme Court has said:

" 'Our statute in regard to the matter provides that the homestead exemption shall not apply to an execution levied upon the property for the taxes due thereon, or purchase price of said property, or *liability incurred for the improvements placed thereon.* Therefore, the defense set up in this case could have been successful only if it had been shown that the mortgage, which was canceled with a part of the money that the defendant loaned to the plaintiff, had been constituted to meet all, any, or some of the said liabilities; but it was not so shown.'

"Conversely, as it has been shown in the case at bar that the money lent by the ancestor of the defendants was applied to the cancellation of Gayol's mortgage, we must conclude that no homestead claim can be enforced against said defendants either."

Feeling aggrieved by that judgment, the plaintiff took an appeal to this court. She assigns in her brief five errors which she alleges the trial court committed in allowing defendant Marcos Tomás Caneja to testify; in finding that Gayol's mortgage was paid with the money borrowed from the defendants' predecessor in interest; in holding that the plaintiff could not have enforced her homestead right as against Gayol; in concluding that because Gayol's mortgage was paid with the money borrowed from the defendants' predecessor in interest, the latter was subrogated to the rights of Gayol and that therefore the claim in question could not be enforced against said persons either; and in rendering judgment contrary to the law and the evidence.

■ The first assignment raises an interesting question of law. The statute invoked provides as follows:

"Section 3.—In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate or

ward, unless called to testify thereto by the opposite party; and the provisions of this section shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent." Section 3 of the act to define who are competent witnesses, approved March 10, 1904, Session Laws 1904, p. 131.

It is true that, strictly speaking, this is not the case of an action by or against executors, administrators or guardians, or of an action by or against the heirs or legal representatives of a decedent arising out of any transaction with the latter; but it can not be gainsaid that the action was brought by the widow who, alleging to have continued to occupy the property as her homestead upon the death of her husband who jointly with her established the said homestead, relies on that fact to claim such right; nor can it be denied that the statements of the plaintiff when testifying had reference to transactions in which the deceased husband participated.

However, as there are involved provisions which constitute an exception (*ley de excepción*), we do not think that the trial court erred in failing to apply the same to a case which did not strictly fall within their purview. This does not mean that, once the testimony is admitted, the reasons which led the lawmaker to establish the absolute prohibition to testify in similar cases should be disregarded when weighing the evidence introduced by the parties.

 The other four assignments of error will be jointly considered, as their determination requires a consideration of the evidence as a whole in connection with the allegations of both parties and of the law and the decisions applicable in the matter.

The plaintiff submitted in evidence the record of the proceedings, case No. 6738 of the District Court of San Juan, brought by the defendants herein against the present plaintiff and her children for the foreclosure of a mortgage, from which it appears that it was sought to recover $3,625 as prin-

cipal and interest on the mortgage credit of $3,000 constituted by a deed dated April 14, 1925, in favor of the ancestor of the present defendants; that after judgment was entered, an order was made for the sale at public auction of the mortgaged property, which sale took place on August 30, 1928, for $4,100, the defendants herein receiving $4,021.66, and the balance left being applied to the payment of taxes due. The marshal served the tenants with notice to vacate the premises. María Aldea Díaz, the plaintiff herein, was one of the "tenants."

The said deed dated April 14, 1925, is transcribed in full in the statement of the case. It was executed by Fernando Pozada and his wife, plaintiff herein, as parties of the first part, the parties of the second part being Antonio Gayol and Marcos Tomás Caneja, who appeared on behalf of his wife Ana Piñán.

It was stated by the Pozada–Aldea spouses that they owned a two-story concrete house and lot numbered 84 on San Agustín Street; that they acquired the lot "and another house that stood therein which was destroyed by fire," by purchase from José Fernández on June 13, 1907, and "as to the present house, it was built with funds of the conjugal partnership"; that the property was encumbered by a mortgage given to Gayol, one of the parties, to secure a loan for $3,000, and that, as the mortgagee had received the principal and the interest upon said mortgage "prior to the execution of this deed from the spouses' 'who were the mortgagors, he was bound to cancel completely the mortgage in question, which of course he did. In this connection, it was expressly stated in the deed:

"The parties hereto, Gayol y Martínez and the Pozada–Aldea spouses, desire to state that the property above described is, so far as the house is concerned, the same one described in the mortgage deed, except that at that time the house in question had only its front part built of cement and its sides and rear of wood, whereas now the whole building is of concrete; and they wish to state further

that this single house and the lot herein described were the property affected by the mortgage which is entirely canceled by the present deed.''

In the instrument the Pozada–Aldea spouses further declared that they had negotiated a loan with Ana Piñán, represented by her husband Caneja, and accordingly by the parties stipulated in substance as follows: $3,000 to be lent by Ana Piñán to the spouses, who secured the loan with ''a voluntary first mortgage upon their property, as described in the first clause of the foregoing statement, in favor of their creditor, the aforesaid Ana Piñán Acevedo, it being agreed that the mortgage shall cover all the present appurtenances and rights constituting the said estate and any that may hereafter exist.''

Such is, briefly, the documentary evidence of the plaintiff. The oral evidence consisted of her own testimony and that of Francisco Figueroa.

She stated that she had lived with her husband and children in the house in question ever since they acquired it in 1907; that at the time of the constitution of the 1925 mortgage, she was living ''in the same house, but in the small house at the back'' with her grandchildren dependent on her husband; that after the latter's death she continued to live there, helped by her eldest son, until she was ejected. She went on to testify textually as follows:

''The house in front was a small wooden structure, roofed with shingles . . . . It was afterwards destroyed by fire, and with our savings amounting to $1,100 or $1,200 in the bank and $3,000 borrowed from don Antonio Gayol, we built the concrete part, but we went on living in the small house built by us in 1910 . . . . the front part of that house, the two-story one, made of concrete, was the one built by us with the $3,000 lent by Gayol and the $1,200 which we had saved, but the rear part where I was living had been built ever since 1910, prior to the deal with Gayol. . . . When the mortgage to Ana Piñán was executed I was living in the small house at the back and also my husband; all of us. My husband borrowed $3,000 from

doña Ana Piñán but I could not tell to what use he applied such sum. At the time the $3,000 was borrowed from don Antonio Gayol the house at the back was there; this one was not burnt.''

Figueroa stated, in brief, that the plaintiff is his mother-in-law whom he had known since 1926; that ever since he knew her she had lived at 84 San Agustín Street with a grandson and with her youngest daughter who is now the witness's wife, and that another of her daughters lives occasionally with her; that the property consisted of a two-story concrete building facing the street, and that at the back yard there stood a house, made partly of concrete and partly of wood, where the plaintiff used to live; that both ''constituted a single unit.'' He was then asked for a better explanation, and he answered textually as follows:

''Because there is a two-story concrete building and the other appears to be a house built prior to that which faces the street and joined thereto. They form a single unit, as if this chair were joined to this table.

''The lady used to live in the backhouse; the two front apartments of the building were occupied by other people who were not related to Doña María but tenants who paid rent.''

The defendants introduced testimonial evidence. Marcos Tomás Caneja, one of the defendants, and Francisco Rivera Collazo who bought the house at public auction, testified as witnesses.

The former stated:

''I know Doña María Aldea y Díaz and I knew also her husband, Don Fernando Pozada y Luis. Doña María Piñán y Acevedo was my wife, now deceased. I also knew Don Antonio Gayol y Martínez. I remember having seen Don Antonio Gayol, Don Fernando Pozada and Doña María Aldea about April 4, 1925, in the office of Notary Dubón. Mr. Pozada told me that he needed $3,000 to settle with Mr. Gayol.''

The plaintiff objected, and thereupon the incident arose which caused the first assignment of error. By leave of

court and over the objection of the plaintiff, the defendant went on to testify as follows:

"The $3,000 in question was lent; it was I who loaned the money as the attorney in fact of my wife, Doña Ana Piñán. Mr. Gayol received the money, I know this because Don Fernando Pozada instructed me to deliver the money to him and I did deliver it to him in person, because he had to sign the concellation of the other mortgage before signing my mortgage. I delivered the money in the notarial office of Attorney Dubón in April, 1925. It was close to my departure for Spain and he suggested to me that I help him out of his difficulties arising from his debt to Gayol in the building of the house. Mr. Pozada told me this . . . This was the only loan operation secured by mortgage between Fernando Pozada y Luis and myself; or my wife Ana Piñán. The money in question was delivered to Mr. Gayol in the notarial office of Attorney Dubón at the very moment of signing the deed. There were present the two of them and the two of us, and Mr. Dubón, of course; all of which took place in Mr. Dubón's office in Tetuán Street."

Rivera Collazo testified thus:

"I know the house at 84 San Agustín Street, as I own it now. I have owned it ever since 1928. I purchased it in the District Court on the same day on which the public auction was held in case No. 6738 of this Court. I remember the San Felipe hurricane; it happened in 1928, almost coincident with the acquisition of the property. I know Mrs. María Aldea Díaz. I saw her once. I saw this lady in that house early in September when I passed by there with the marshal. This was before the hurricane. After the hurricane I called again at the house but Doña Maria was not there."

This was the whole evidence relied on by the trial judge for his findings as set forth in his statement of the case and opinion.

Granting that it could be held as proven that the $3,000 borrowed from Gayol was applied to the reconstruction of the two-story concrete house and that the funds subsequently obtained from the defendants' predecessor in interest was applied to the payment of the debt owing to Gayol, we do not think that we should fail to take into consideration—as

the trial judge completely failed to do—the existence of the small house at the back which, according to uncontroverted evidence, constituted the true homestead of the plaintiff and which was not apparently included in the mortgage given to Gayol, although it was actually included in the mortgage foreclosed by the defendants, for which reason it was included in the sale at public auction.

This small house seems to have been built separately notwithstanding it constituted a single unit with the two-story concrete house mortgaged to the defendants' predecessor in interest. It was built prior to the fire and was not destroyed by it. If Gayol had foreclosed his mortgage and obtained a forced sale of the entire property, the owners of the property could have enforced against him the homestead right which they claimed in the small house at the back where they lived, since the money borrowed from Gayol had been applied to the house in front but not to the small house. The whole right acknowledged by the court in favor of the defendants is derived from any that Gayol might have had, and, as the latter has no existence, the former can not stand.

But there is more. It is admitted that neither at the time of the constitution of the mortgage in favor of Gayol nor at the time of the contract with the defendants' predecessor in interest, was there any waiver of the homestead right on the part of the Pozada–Aldea spouses. It is also admitted that there was no agreement regarding any subrogation of Mrs. Piñán to the rights of Gayol. At the most it might be concluded that it had been shown that the Pozada–Aldea spouses, being in need of funds to settle with Gayol, applied to Mrs. Piñán for a loan which they obtained from her by an ordinary independent contract of loan secured by mortgage, without any stipulation as to the application to be given to the money lent. The application of the money, even admitting as true the testimony of the defendant Caneja, can not be considered to have been a condition for the execution of the

·contract. According to the decisions such transactions are not among those exempted by a statute like ours from the enforcement of a homestead right.

In *Engaar* v. *Schmidt*, 171 N. W. 905, 906, the Supreme Court of Nebraska expressed itself as follows:

"The fact that a married man borrowed money and told the lender at the time that he intended to use the money, or a part of it, to pay for a homestead previously purchased and conveyed, and the money is actually used for that purpose, is not sufficient when standing alone to entitle the lender to a lien for the purchase price. In the present case the parties did not stand in the relation of vendor and purchaser, nor was a vendor's or other lien created. The debt was created and conveyances delivered long before the loan was made. Plaintiff did not pay the debt at the instance of the debtor, but merely loaned the money directly to him without agreement respecting the use to which it was to be applied. *Rodman* v. *Sanders,* 44 Ark. 504; *Griffin* v. *Proctor's Adm'r,* 14 Bush. (Ky.) 571; *Carey* v. *Boyle,* 53 Wis. 574, 581, 11 N. W. 47."

The case of *Ruiz* v. *Barreto,* 46 P.R.R. 357, has not the scope attributed to it by the trial court and by the appellees. Perhaps we ought to have been more specific in that case, but there was no need for it then, because the decision rendered therein was in favor of the recognition of the homestead right. Our opinion in said case should be construed in harmony with the present one. If both parties agree that the money lent is to be applied wholly or partially to the discharge of the debt or lien incurred for. the purchase of the property or for any improvements to be made thereon (*Proviso* of section 4 of the Homestead Act, Code of Civil Procedure, 1933 ed., p. 307), and is actually so applied, then the use to be made and actually made of the proceeds of. the loan is and must be considered as one of the terms of the contract which subrogates the new lender to the rights of the former as to the homestead.

It only remains for us to consider the demurrers which, by stipulation of the parties approved by the court, were left for determination after the hearing of the evidence.

The demurrer based on prescription was not in the form provided by law. Section 128 of the Code of Civil Procedure (*Catoni* v. *Martorell*, 38 P.R.R. 295). The defendants confined themselves to pleading prescription without citing the statute relied upon.

In the brief filed in this court, the defendants state, without making any pertinent citation of authorities and without advancing weighty arguments, that whatever action might be available to the plaintiff it would be one for damages, under section 1803 of the Civil Code, which is barred after one year.

The right of homestead is recognized by law. Its nature has been repeatedly defined in the decisions of this court. It is enjoyed upon the property but only to the extent and value of $500, and where the property is sold owing to the fact that its value exceeds the said amount in order to discharge the liabilities of the owner not exempt from execution, it becomes restricted to $500. To maintain that the enforcement of such right amounts to an action for damages is to change the peculiar nature of the case. The right from which the claim arises does not accrue as the result of a wrongful or negligent act on the part of the creditor. It had been previously constituted in favor of the debtor upon the property mortgaged in favor of the creditor. The latter is entitled to collect his credit by having the encumbered property sold, but he in turn must recognize and satisfy the right of the debtor to the extent of $500. The creditor failed to do so in the present case and the action against him accruing to the debtor, who was no longer in the possession of the immovable, was a personal one of debt which, having no special term of prescription fixed by law, prescribes after fifteen years, according to section 1864 of the Civil Code, 1930 ed.

As to the demurrer for insufficiency, all that appears in the brief of appellees is the following:

"As a special defense we set up that the complaint did not state facts sufficient to constitute a cause of action, and if so, the

action of the plaintiff has prescribed, which demurrer rests on the doctrine established by this court in *Catoni* v. *Martorell,* 38 P.R.R. 295.''

The case cited by them is rather adverse to their contention. This court held therein as follows:

''In the third and last place, although it is true that the so-called privileged demurrer of lack of jurisdiction and of facts can be pleaded for the first time in this Supreme Court, that of lack of facts does not include prescription in a case of this nature.

''The issue was raised and joined in the district court. The defendant did not plead well on the first occasion and on the second occasion failed to plead prescription. Her attitude implies the waiver of a privilege and viewed from the basis of that waiver, the complaint is entirely sufficient, for it adduces all facts required to support the action and the judgment rendered.''

Moreover, although within the general demurrer for insufficiency consideration might have been given to the ground of prescription, we have already seen that, considered on its merits, it would always have to be overruled.

As to the nonjoinder of parties defendant on the ground that the purchaser of the property at public auction should have been joined as defendant in the action, it will be sufficient to quote, in order to show that the defect is nonexistent, what this court said in *Veve* v. *Keith,* 49 P.R.R. 178, thus:

''Once an estate of homestead is established and its existence is declared proved, the owner thereof is entitled to receive, and the foreclosing creditor is bound to pay, its value upon the consummation of the judicial sale of the property claimed as a homestead.

By virtue of all the foregoing, and it clearly appearing from the record that the plaintiff had her right of homestead established in the property in question at the time the same was foreclosed by the defendants, the judgment appealed from must be reversed and another rendered instead sustaining the complaint and adjudging the defendants to pay to the

plaintiff the sum of $500 as the value of her estate of homestead, without special imposition of costs.

Mr. Justice Córdova Dávila took no part in the decision of this case.